## M. W. Cockrum, Appellee, v. Theodore C. Keller, Appellant.

1. MINES AND MINERALS, § 34a*—*when finding as to fraud and deceit in sale of coal rights warranted by evidence.* In an action for fraud and deceit practiced by defendant on plaintiff, whereby the latter was induced to sell the coal under his lands for less than it was worth, *held* that a finding for plaintiff was sustained by the evidence.

2. FRAUD, § 58*—*when action lies for fraud and deceit.* A party induced by the fraud of another to enter into a written contract may bring an action for fraud and deceit, though the contract is under seal.

3. FRAUD, § 84*—*sufficiency of declaration in action for fraud and deceit.* · A declaration in an action for fraud and deceit in inducing plaintiff to sell the coal under his lands, *held* to state with particularity the fraudulent representations and deceits relied upon, and therefore not defective as stating conclusions only.

4. FRAUD, § 86*—*when variance between declaration and proofs not fatal.* In an action for fraud and deceit in inducing plaintiff to sell coal under his land for an inadequate price, *held* there was no fatal variance between the declaration and proofs, where the evidence sustained the charges substantially as laid in the declaration.

5. FRAUD, § 125*—*when damages not excessive.* A judgment in favor of plaintiff for $3,800 for fraud and deceit in inducing plaintiff to sell coal beneath his land at an inadequate price, *held* not excessive where the evidence tended to show that the coal rights were worth more than the sum paid, together with the amount of the verdict.

Appeal from the Circuit Court of Franklin county; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the March term, 1914. Affirmed. Opinion filed July 28, 1914. Rehearing denied October 28, 1914. *Certiorari* denied by Supreme Court (making opinion final).

UNDERWOOD & SMYSER and HART & WILLIAMS, for appellant; CHARLES R. YOUNG and MOSES PULVERMAN, of counsel.

DILLON & STRICKLAND and LAYMAN & JOHNSON, for appellee.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

In this suit appellee claimed $16,000 damages on account of fraud and deceit practiced on him by appellant, whereby he was induced to sell the latter the coal under three hundred acres of land in Franklin county, Illinois, at $7.50 an acre, when it was really worth a much greater sum.

The declaration, which consisted of three counts, alleged that appellant, a coal operator, desired to buy a large body of coal, oil, gas and other minerals underlying the surface of the lands of appellee and other lands contiguous thereto; that he secured permission of appellee and certain others to drill test or prospect holes on their respective lands; that he did drill said holes on the lands of each of said parties and secured cores of coal which demonstrated to him the fact that the stratum of coal underlying the surface of said land was eight feet six inches in thickness and worth at least $50 an acre, which facts appellant withheld from appellee; that for the purpose of cheating and defrauding appellee, appellant represented that the stratum of coal was less than eight feet in thickness and contained a parting of slate, rock and other foreign substance which made it practically worthless for mining purposes, and that in no event would it be worth to exceed $7.50 an acre; that after appellant had prospected said coal by drilling, he showed appellee three cores of coal purporting to be cores taken from the land of Hill, Montgomery and appellee respectively, and represented to appellee that said cores naturally and properly contained a parting of slate, rock, dirt or other foreign substance; that appellant knew at the time he made such representations as aforesaid that they were false and untrue; that appellee did not know the falsity of such representations but relied upon the truth of the statements made by appellant, and on November 6, 1905, sold him the coal, oil, gas and other

minerals underlying his premises for the sum of $7.50 an acre.

The case was submitted to a jury which returned a general verdict in favor of appellee for $3,800. At the same time special findings were asked which were also made by the jury. Upon the return of the verdict, appellant insisted that the special findings of fact, especially the third made by the jury, were inconsistent with the general verdict and should control the same, and moved that judgment be entered in favor of appellant and against appellee for costs, which motion was granted by the court and judgment entered accordingly. From that judgment an appeal was taken to this court, where it was held that the special findings of fact were not inconsistent with the general verdict and should not control the same, and the judgment of the trial court was reversed and the cause remanded with directions to that court to enter a judgment in favor of Cockrum, the plaintiff below, upon the general verdict, for the sum of $3,800 and costs. *Cockrum v. Keller*, 173 Ill. App. 245. Appellant was granted a certificate of importance by this court and perfected an appeal to the Supreme Court, where it was decided that this court was correct in holding that the special findings were consistent with the general verdict and that such special findings did not control the general verdict in favor of Cockrum. But the judgment was reversed and the cause remanded to this court with directions to reverse the judgment of the trial court and remand the cause, with directions to that court to overrule the motion for judgment on the special findings and to entertain a motion for a new trial if one should be made, and if such motion should be overruled, to enter judgment on the general verdict. 258 Ill. 276. Thereafter the cause was remanded to this court and by this court to the trial court where a motion for a new trial was entered, and the same having been overruled, judgment was rendered against

appellant Keller for $3,800 and costs, and from that judgment this appeal is prosecuted.

The reasons assigned and argued by appellant for the reversal of this judgment are: That the general verdict upon which the judgment was entered was not sustained by the proofs; that a court of law had no power to investigate the question as to whether there were fraudulent representations concerning the nature and value of the consideration of the contract beween the parties; that the declaration failed to state a cause of action and such defect was not cured by the verdict; that there was a variance between the allegations of the declaration and the proof, and the damages awarded were excessive. For a general statement of the facts, reference is made to the opinion of this court when the case was here on the former occasion referred to. It may be further said that no question was raised but that the core of coal as shown to appellee in the box contained a parting of seven inches of blue band, slate or other foreign substances which, if found in the vein of coal, would greatly injure if not practically destroy its value for mining purposes, and that appellant stated that the land was not a good coal proposition. Appellant, however, insists that the evidence does not show that such a parting as that disclosed by the core of coal in question did not actually exist as the core was taken from the drill; also that the proof fails to show that he was instrumental in tampering in any way with the core of coal as it came from the vein.

It appeared from the proofs that prior to the date of the drilling mentioned, appellee had given a written option for the sale of a greater portion of the premises in question to a nephew who had transferred it to Messrs. Fitzgerrell, Stamper and Espy, and that these three had subsequently transferred the option to appellant; that when some three feet of coal had been bored through and the drillers announced that fact, appellant refused to permit Fitzgerrell, Stamper and

Espy to be present when the test was completed and the core taken out; that it was, however, finally agreed after much wrangling that Espy should be present when the drill went through the coal and thereafter the drill was sunk through the vein and it was found there were nine feet one inch of coal with three-fourths of an inch of blue band; that three feet of the core had been taken out on one day and the balance on the second day when Espy was present; that when the whole core was exhibited to appellee it showed a parting about eighteen inches from the bottom in the stratum of coal, consisting of blue band, slate or other impurities, seven inches thick and this parting had been inserted in the core after it had been removed from the vein. That this foreign substance was inserted in the core after it came from the vein is denied by witnesses who testified on behalf of appellant. It was therefore for the jury, who heard the testimony and saw the witnesses on the stand, to determine what weight should be given to the testimony of the several witnesses and which were more worthy of credence, and to decide from all the evidence in the case the true state of facts. In deciding the facts, the jury, in addition to the general verdict in favor of appellee, made the following special findings: "Do you find that defendant personally directed or authorized any tampering or interfering with or changing the core taken out by drilling on the land of said plaintiff? Ans. Yes.

"Do you find that defendant personally made to plaintiff personally any false statements concerning coal underlying land then owned by plaintiff? Ans. Yes."

From an examination of the record we find that the facts disclosed therein would not warrant us in disturbing the verdict of the jury. After the expiration of the option above referred to and subsequently to the controversy over the core of coal taken from the

vein, appellee entered into a written contract, under seal, with appellant to sell him the coal, oil, gas and other minerals underlying said premises, consisting of three hundred acres, for $2,200, and also to sell him the fee to a portion of said premises for $5,400, and this contract appears to have been carried out by the parties thereto. It is contended by appellant that as this contract is under seal, appellee cannot now attack the consideration at law but that his remedy, if any he has, is in equity to set aside the contract. It does not follow, however, from the fact that appellee had the right to proceed in equity to set aside the contract in question, that he could not sue at law to recover for the fraud he claims to have been perpetrated upon him by appellant. In 14 Am. & Eng. Ency. of Law (2nd Ed.) at page 167, the following statement is made: "It has sometimes been contended that when a party has been induced to enter into a contract by the fraud of the other party, his only remedy is to rescind the contract and sue to recover what he has parted with or set up the fraud as a defense, if he is himself sued on the contract. It is thoroughly well settled, however, that he has an election of remedies, and that, while he may rescind, he is not bound to do so but may hold the other party to the contract, and sue him to recover the damages which he has sustained in consequences of the fraud." Our own courts have also had something to say upon this subject in conformity with the doctrine above expressed. In *Antle v. Sexton*, 137 Ill. 410, where it was claimed that fraud and deceit had been used by appellant to induce appellees to enter into a written contract for the sale of certain standing timber, it was said: "Surely, where a misrepresentation is made as to a material fact, and such misrepresentation is made knowingly, and for the express purpose of deceiving and defrauding, and the party injured relies upon the statements made, and under circumstances which would induce a reason-

ably prudent man to so rely, there must be a right of action at law for fraud and deceit.   *   *   *   The action was not brought upon the contract, but upon false representations and deceit, used to induce the plaintiff to enter into the contract, whereby they have been damnified.  It is well settled that such an action will lie though the parties may have entered into a written agreement, and though in such agreement there be a warranty or stipulation upon the point covered by the misrepresentations.''  The Appellate Court of the First District said, in discussing a case brought to recover damages for fraud and deceit, alleged to have been used by one of the parties in the sale of a farm, in *Williams v. Wilson,* 101 Ill. App. 541: ''This is what is known as an action for deceit. It is not based upon the deed given nor upon the contract entered into, but upon alleged fraud by which appellant was induced to enter into the contract ultimated by mutual deeds.  Such an action will lie although the parties have entered into a written agreement, thus merging therein the previous negotiations, because the complaint of the plaintiff is of fraudulent practice by which he was persuaded to contract; and such action may be maintained although there be a written warranty or stipulation upon the point covered by the misrepresentations complained of.'' It is further claimed by appellant, in this connection, that the action for fraud and deceit could not be maintained for the reason that both parties had equal means of knowledge of the matters concerning which the misrepresentations are said to have been made. If, however, the proof introduced by appellee is to be relied upon, he did not have equal means of knowledge with appellant for knowing the true condition of the vein of coal and upon this subject the jury have decided, as they had a right to, in favor of appellee.

The contention of appellant that the declaration failed to state a cause of action is based upon the

claim that the declaration does not allege substantial facts, essential to a right of action but states conclusions only. It is true, as stated by appellant and held in *Weigand v. Cannon,* 118 Ill. App. 635, that facts from which the legal conclusion of fraud is to be drawn, must be set up. This is required in order that the party charged may be notified of the evidence he is expected to meet and the Court in that case says: "A plea of fraud in procuring the execution of a written instrument must set out the facts from which the legal conclusion of fraud is to be drawn, in order that the party may be notified of the evidence he is expected to meet. It is not sufficient to allege fraud generally for the purpose of assailing a transaction on that ground, but the complaining party must state in his pleading and prove on the trial the specific acts or facts relied on as establishing the fraud." It appears to us, however, that the declaration in this case stated with particularity the fraudulent representations and deceits relied upon by appellant and that appellant was notified thereby explicitly of the charges made against him, and which he would be expected to meet.

The claim of appellant that there was a fatal variance between the allegations of the declaration and the proofs is based upon the fact that the declaration filed in the case alleged that appellee's land was "practically free" from foreign or faulty substance and was of extra fine quality, when the proof offered by appellee shows that there was a parting of at least three quarters of an inch of faulty substance. In *Ladd v. Piggott,* 114 Ill. 647, which was an action for fraud and deceit, alleged to have been practiced by the defendant in the sale and exchange of property, it is said: "Plaintiff is, perhaps, not bound to prove the representations precisely as alleged, but he must prove the substance or the material parts of such representations, and more strictness than that the law does not

require." In *Endsley v. Johns,* 120 Ill. 469, which was also an action for fraud and deceit, it is said to be true, "that the plaintiff might recover although he did not prove the misrepresentations precisely as laid, nor in all the different forms as laid; but it was required of him to prove substantially the material allegations." In this case appellee introduced proof to sustain the charges substantially, if indeed it could be said not to be precisely, as laid in the declaration, and appellant's objection on this score does not appear to us to be well founded.

The last contention of appellant is that the damages awarded are excessive and could not have been legally arrived at on any theory of the case, based upon the evidence. In discussing this question, appellant argues that one hundred and sixty acres of appellee's land was sold to appellant in fee and as part of the consideration for that sale, appellant agreed to and did pay appellee $2,200 for the coal underlying the whole tract of three hundred acres, and says that appellee was not entitled to any damages because he sold both his land and his coal at an acceptable price and was fully paid therefor. The defect in this position is that it takes no account of the fraud and deceit alleged to have been exercised by appellant which led appellee to believe that the vein of coal underlying the land had a fault in it, thus rendering it of little value. The fact that part of the land was sold in fee could not affect the amount of damages to be recovered by appellee as, in fixing the value of the fee, he must have estimated the value of the underlying coal at the small amount it was supposed to be worth by reason of the fault it was said to contain. The amount of the verdict and judgment in favor of appellee was $3,800. There was proof tending to show that the coal rights were actually worth as much as $25 an acre, which would be $7,500 for the whole tract. If to the amount of the verdict there be added the $2,200 received by appellee

for his coal rights, the sum will be $6,000, which is considerably less than some of the proof shows it to have been worth, and therefore the verdict cannot properly be considered as excessive.

The judgment of the court below will be affirmed.

*Affirmed.*