**Robert PITTS, Plaintiff,**

v.

**Warren P. KNOWLES, Governor of the State of Wisconsin, et al., Defendants.**

**No. 69–C–37.**

United States District Court,
W. D. Wisconsin.

March 20, 1972.

Christopher J. Wilcox, Madison, Wis., for plaintiff.

Mary V. Bowman, Asst. Atty. Gen., Madison, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

Defendants have moved for summary judgment. Plaintiff opposes this motion, and moves for a three-judge court.

### Motion for Three-Judge Court

Earlier in this case I concluded that the relief which plaintiff actually seeks is not an injunction "restraining the enforcement, operation or execution of [a] state statute" requiring a three-judge court under 28 U.S.C. § 2281, but rather equal access to the Quran, the sacred text of his religion, and an end to the practice of placing Bibles in his cell.

But plaintiff has renewed his motion for a three-judge court. He argues that Wis.Stat. § 46.066(3) [1] has the effect of sponsoring one religion over another, thus establishing a religion in violation of the First and Fourteenth Amendments. He argues that 46.066(3) is unconstitutional on its face in that it allows him to request and to have the use of a Christian Bible, but makes no allowance for him to request and to have the use of the sacred text of any other religion on equal terms.

On its face, 46.066(3) does not preclude prison authorities from providing the sacred texts of other religions on an equal basis with Bibles. Nor does it specify the extent of "use" of Bibles which is to be allowed. Such use could be free and continuous as plaintiff alleges is the case with Bibles, or some more limited loan basis arrangement, as plaintiff alleges is presently the case with Qurans, and the sacred texts of other religions.

The controversy is limited to the alleged inequality of use of the two sacred texts accorded to prisoners. Such inequality is not dictated by 46.066(3), nor does a preference invariably result from the prison authorities' implementation of the statute.[2] *See* Ex parte Brans-

1. "Every inmate who requests it shall have the use of the Bible."

2. Plaintiff also alleges that he has found Bibles in his cell although he has not requested them. It is questionable whether an allegation that such a practice inhibits the free exercise of religion by the plaintiff or constitutes an establishment

ford, 310 U.S. 354, 361, 69 S.Ct. 947, 84 L.Ed. 1249 (1939). Christian Bibles could be provided on the same loan basis as Qurans, consistently with the statute. Inherent in the statute is no sponsorship of one religion over another, nor establishment of any religion. Nor will defendants be directed to violate the statute if they are ordered to provide the sacred text of plaintiff's religion on the same basis as the Bible is provided.[3]

Convening a three-judge court is a special and extraordinary procedure[4], and the three-judge court statutes are to be interpreted strictly.[5] The policy behind the statute is to "prevent a single federal judge from being able to paralyze totally the operation of an entire regulatory scheme, either state or federal, by issuance of a broad injunctive order."[6] This would not result if the court were to grant the relief requested by plaintiff. Thus, neither the policy nor the language of the statute requires convening a three-judge court.

### Defendants' Motion for Summary Judgment

I find that there is no genuine issue as to the material facts stated in the following paragraph.

Plaintiff is a member of a religious sect known as the Black Muslims. The sacred text of the plaintiff's sect is the Quran.[7] The prison library has two copies of the Quran and use of the Quran is provided on a limited, loan-basis arrangement to prisoners who request it from the library. The prison has a supply of approximately 700 Christian Bibles, of which 600 were donated to the prison and 100 were purchased by the State. The supply of Christian Bibles enables prison officials to make available to prisoners practically free and continuous use of the Bible.

Defendants contend that a prisoner's practice of his religion may be reasonably circumscribed while he is in prison and that plaintiff has failed to show why the provision of the two Qurans is constitutionally unreasonable.[8]

In Cooper v. Pate, 382 F.2d 518 (7th Cir. 1967), Black Muslims were denied the privilege of consulting with ministers of their faith—a privilege accorded prisoners of other faiths. The court ruled that, absent a showing of clear and present danger posed by such visits, "the denial of the privilege of such communication to adherents of one faith while granting it to others is discrimination on account of religion." 382 F.2d at 522. The court continued:

" . . . discrimination in treatment of adherents of different faiths could

---

of the Christian religion presents a federal constitutional question sufficiently substantial to warrant either this court's or a three-judge court's intervention. In any event, such a practice is also not required by 46.066(3) nor is it necessary to effectuate the purpose of that statute.

3. *See, e. g.,* Bradley v. School Board of City of Richmond, Virginia, 324 F.Supp. 396, 400 (E.D.Va.1971).

4. Kennedy v. Mendoza-Martinez, 372 U.S. 144, 155, 83 S.Ct. 554, 9 L.Ed.2d 644 (1966).

5. Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941).

6. Kennedy, supra, n. 5.

7. Although defendants allege in their answer to the amended complaint that plaintiff is an "Orthodox Muslin" [sic], they have since stated that such designation was in error and that "Orthodox Muslim"

may be read interchangeably with Black Muslim. Defendants have correctly referred to the Quran as the sacred text of plaintiff's religion in their affidavits and briefs and acknowledge that it is use of the Quran, as opposed to another religious text, which is the basis of plaintiff's complaint. Thus, although the correct designation of plaintiff's religion is material to the case, there seems to be no genuine dispute between the parties on the issue.

8. That 600 of the 700 Bibles available to prisoners are private gifts does not mean that state action is not involved. Private donations are only possible through the acquiescence of prison authorities. Thus, the availability of 700 Bibles is the result of state action and the disparity between the provision of Bibles and Qurans is challengable as action under color of state law for purposes of 42 U.S.C. § 1983.

be justified, if at all, only by the clearest and most palpable proof that the discriminatory practice is a necessity. Proof which would be more than adequate support for administrative decision in most fields does not necessarily suffice when we are dealing with the constitutional guarantee of freedom of religion, and with an exercise of religion so widely considered essential as worship services." [9]

Fulwood v. Clemmer, 206 F.Supp. 370 (D.C.D.C.1962), involved the provision of religious medals to prisoners. The Department of Corrections purchased religious medals for Catholics, Protestants and Jews and distributed them as regular prison issue. The court held that the denial of medals to Muslims in the face of state purchase and distribution of medals of other faiths constituted religious discrimination.[10] In Jackson v. Godwin, *supra*, in the context of racial discrimination, the court stated:

"If prisoners are to have the rights and privileges of access to newspapers and magazines, then such rights and privileges cannot be arbitrarily denied or curtailed or *given in less quantity or quality* to Negro prisoners because of their race or because of the prison officials' fear of the Negro 'point of view.' " [11]

■ Defendants have not demonstrated that the discrimination in the manner in which the Bible and the Quran are made available serves any state interest, much less the compelling interest required in the area of First Amendment freedoms. Such discrimination cannot be justified on grounds of prison discipline or administrative convenience, nor is any attempt to do so made by the defendants. There is no question of clear and present danger preventing state officials from equalizing access to religious texts.

■ Although plaintiff has not moved for summary judgment, I have the power to enter such judgment if there is no genuine issue of fact requiring trial and plaintiff is entitled to prevail. 3 Barron and Holtzoff, Federal Practice and Procedure, § 1239 (Wright ed. 1958); Procter & Gamble Independent Union of Port Ivory, N. Y. v. Procter & Gamble Mfg. Co., 312 F.2d 181 (2nd Cir. 1962) cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1962); Hennesey v. Federal Sec. Adm'r, 88 F.Supp. 664 (D.C.Conn.1950).

Therefore, it is hereby ordered that the plaintiff's motion for the convening of a three-judge court pursuant to 28 U.S.C. § 2281 be denied. It is further ordered that defendants' motion for summary judgment is denied and that judgment be entered for the plaintiff enjoining the defendants from continuing the practice of providing use to plaintiff of the Quran on a more limited basis than the use of the sacred texts of other religions is provided to other prisoners.

9. 382 F.2d at 522. "Viewed as ordinary reading matter, with only slight relevance to religion, it would be most difficult to establish that exclusion of any such material from a prison is unlawful. Considered as religious material, one question would be whether material of the same degree of religious relevance is permitted prisoners of other faiths." *Id.* at 523. See Gilmore v. Lynch, 319 F.Supp. 105 (N.D.Cal.1970); Jackson v. Godwin, 400 F.2d 529, 541 (5th Cir. 1968).

10. *See also*, Sewell v. Pegelow, 304 F.2d 670 (4th Cir. 1962); Rivers v. Royster, 360 F.2d 592 (4th Cir. 1966); Banks v. Havener, 234 F.Supp. 27 (E.D.Va.1964).

11. 400 F.2d at 540 [emphasis supplied] In *Jackson* the court emphasized that in both the areas of racial classification and discrimination and First Amendment freedoms, stringent standards are to be applied to governmental restrictions thereon. *Id.* at 541; n. 10, *supra*.