Dimitri STAMATIOU, Plaintiff, Counter-
defendant,

v.

**UNITED STATES GYPSUM COMPANY,**
a corporation, et al., Defendants,
Counter-plaintiffs.

No. 73 C 3257.

United States District Court,
N. D. Illinois, E. D.

June 16, 1975.

George E. Faber, James R. Bellmann, Chicago, Ill., for plaintiff.

Edward S. Silber, Ward A. Meythaler, Price, Cushman, Keck, Mahin & Cate, Chicago, Ill., for defendants.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Pending before the court for decision are cross-motions for summary judgment and the plaintiff's motion to dismiss the defendants' counterclaim for failure to state a claim upon which relief can be granted. Previously, the defendants filed a motion to dismiss the plaintiff's four-count complaint, which was denied in a memorandum order dated November 1, 1974. That order set out the facts surrounding the plaintiff's complaint and, therefore, no further delineation is necessary.

### The Defendants' Motion for Summary Judgment

When a party presents a motion for summary judgment the burden is upon him to establish that the facts which entitle him to judgment are not in dispute.

6 J. Moore, *Federal Practice,* ¶ 56.17 [11], at 2509, 2510 (2d ed. 1974). Furthermore, the evidence must be viewed in the light most favorable to the party opposing the motion, and summary judgment should be granted only when the pleadings, depositions, affidavits, and admissions disclose that there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See, e. g., Crest Auto Supplies, Inc. v. Ero Manufacturing Co.,* 360 F.2d 896, 899–900 (7th Cir. 1966); *Mintz v. Mathers Fund,* 463 F.2d 495 (7th Cir. 1972). With these principles in mind, the court is persuaded that no genuine issue of material fact exists under Count I and that the defendants are entitled to summary judgment.

In the prior memorandum order it was concluded that an act forbidden by a statute cannot be the foundation of a legal contract in Illinois. *Longenecker v. Hardin,* 130 Ill.App.2d 468, 474, 264 N.E.2d 878, 880–81 (1st Dist. 1970). The defendants' contention is that the alleged contract between United States Gypsum Company and Stamatiou is a clear violation of the Illinois theft statute. *Ill.Rev.Stat.,* ch. 38, § 16–1 defines theft as follows:

A person commits theft when he knowingly:

\* \* \* \* \* \*

(c) Obtains by threat control over the property of the owner; . . . [and]

\* \* \* \* \* \*

(d)(1) Intends to deprive the owner permanently of the use or benefit of the property; . . .

The term "threat" is defined at *Ill.Rev. Stat.,* ch. 38, § 15–5 (1973):

As used in this Part . . ., "threat" means a menace, however communicated, to:

\* \* \* \* \* \*

(j) Testify or provide information or withhold testimony or information with respect to another's legal claim or defense; . . .

The defendants contend that Stamatiou committed theft when he obtained control over money belonging to USG under a threat to withhold information relating to its legal claim to the engineering documents unless the money was paid.

No Illinois cases have been discovered by counsel or the court that discuss the applicable provisions of the Illinois theft statute. Indiana, however, has a similar theft statute, which was interpreted by one Indiana court in a manner highly supportive of the defendants' position.

In *Blackwood v. State*, 299 N.E.2d 622 (Ind.App.1973), the defendant-appellant was convicted of attempted control of property by theft. At trial the evidence disclosed that Blackwood learned of the location of a stolen coin collection and offered to inform the owner of its whereabouts if he would pay the defendant $5,000. The owner called the police who were subsequently able to arrest the defendant. The court concluded, viewing the evidence in the light most favorable to the state, that the *conviction should be affirmed*. The court reasoned that Blackwood attempted to obtain money from the collection's owner by threatening to withhold information as to its location unless the money demanded was paid. See *Ind.Ann.Stat.* 10–3040(18)(i), 10–3041(1) (Burns' 1973 Supp.).

*Blackwood* is closely analogous to the present case. And although the court was reviewing the evidence in the light most favorable to the state, the analysis of the statute is logical and persuasive. Stamatiou obtained control over $25,000 in cash and and a certified check in the same amount in exchange for information concerning the location of engineering documents to which USG had a legal claim. The crux of the controversy, however, is whether Stamatiou communicated a threat to withhold the information unless the defendants paid the demanded sum of $100,000. After

reviewing the transcripts of the various telephone communications and the plaintiff's deposition, there can be no dispute that Stamatiou had no intention of providing USG with any information or aid in the recovery of the drawings unless he was paid. *See, e. g.,* phone transcripts at 2–3, 16–17, 45 (November 2, 3, 1973); F.B.I. phone transcripts at 6, 7 (November 5, 1973).[1] Furthermore, it is undisputed that during the entire period of negotiations Stamatiou refused to identify himself or meet with USG representatives unless the money was paid.

The plaintiff has offered no evidence by affidavit or otherwise to contradict the above version of the facts. Instead, he suggests three reasons why summary judgment is inappropriate. The first argues that he never had control over the documents belonging to USG and, therefore, there could be no violation of the theft statute. What this argument misconceives is that the theft occurred by obtaining control over the money and not the drawings.

The plaintiff next argues that his conduct did not violate the theft statute because contracts to sell information are not invalid in Illinois. In support of this proposition the plaintiff relies heavily on *Rieman v. Morrison*, 264 Ill. 279, 106 N.E. 215 (1914). Although the facts of *Rieman* are unclear, it appears that Rieman was hired to recover lost property. But even if the case is factually apposite, it was decided long before the present Illinois theft statute was enacted. And it is against this statute that the contract must be evaluated. *See Rieman v. Morrison*, 264 Ill. at 286, 106 N.E. at 216.

The plaintiff finally argues that there was no theft because USG has never established that the drawings were its property. Throughout the course of this case, however, the parties have asserted that the documents did belong to USG

---

[1]. Stamatiou stated during the various phone conversations that he knew the location of the documents and that he would go to court to help obtain a search warrant so the documents could be recovered.

and that they had been converted by Universal Gypsum. Even assuming that, for some reason not in the record, USG did not have perfect title to the drawings, both Stamatiou and the defendants reasonably believed USG had a legal claim to them. This belief alone would be sufficient to invite the sanctions of the theft statute. The purpose of the statute is not to determine the validity of claims, but to prohibit individuals from threatening to withhold information or testimony unless property is given in exchange for information or testimony.

■ In summary, the plaintiff obtained control over property of USG, money and a certified check, by threatening to withhold information and testimony concerning the legal claim of USG to the engineering documents that were in the possession of Universal Gypsum. Furthermore, the plaintiff intended to permanently deprive USG of the money and check. Therefore, as a matter of law, since the foundation of the alleged contract was an agreement in violation of the Illinois theft statute, the contract is unenforceable. The defendants' motion for summary judgment on Count I of the complaint is granted.

■ Count III of the complaint, which seeks damages for alleged malicious interference with plaintiff's contract, is similarly bottomed on the agreement alleged in Count I. Since the agreement is unenforceable, there could be no malicious interference with rights created by it. Accordingly, defendants are entitled to summary judgment on Count III of the complaint.

The defendants have also moved for summary judgment on Count II of the complaint, which alleges that the defendants recorded a number of telephone calls between Stamatiou and themselves in violation of Ill.Rev.Stat., ch. 38, § 14–2 (1973), and two federal eavesdropping statutes. 18 U.S.C. § 2511; 47 U.

S.C. § 605 (1970). The plaintiff seeks actual and punitive damages for the alleged recordings. Ill.Rev.Stat., ch. 38, § 14–6 (1973); 18 U.S.C. § 2520 (1970).

Reviewing the materials submitted, it is immediately apparent that there are no issues of fact regarding the recording of the conversations. The affidavit of Thaddeus Snell reveals that the plaintiff had telephone conversations with USG representatives on five different dates. The first call which was on October 30, 1973, was not recorded. After that call, however, Mr. Snell called the F.B.I. and informed agent Treviranus of the anonymous call and its contents. The next day, October 31, Treviranus called Snell, telling him that a possible violation of the Hobbs Act had occurred, but that more information revealing exactly what was said was needed. In response to the request for more precise information USG officials decided to record further conversations with the anonymous caller. Thereafter, recordings of phone conversations were made on November 2, 3 and 5. There is no evidence suggesting that the F.B.I. specially requested that the calls be recorded.

The situation changed, however, on November 5, when F.B.I. special agent Kusserow informed USG that he had been placed in charge of the investigation. Kusserow went to the offices of USG and proceeded to record two calls from the plaintiff on the same date. These conversations, as well as those recorded by USG, were transcribed and submitted as evidence on the pending motions.

■ Review of the federal statutes and cases decided pursuant to them reveal that defendants are entitled to summary judgment on the federal claims. The plaintiff first asserts that there was a violation of 18 U.S.C. § 2511 (1970).[2] This contention is without

---

2.  (d) It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the

merit. The statute does not proscribe a party to a telephone conversation from recording the conversation or publishing it, without the consent of the other party. *See, e. g., Smith v. Cincinnati Post & Times Star,* 475 F.2d 740, 741 (6th Cir. 1973); *Meredith v. Gavin,* 446 F.2d 794 (8th Cir. 1971). Since there was no violation of Section 2511, then obviously there can be no recovery under Section 2520.[3]

The plaintiff further asserts that the previously described recordings were made in violation of 47 U.S.C. § 605 (1970). Again, however, the cases are clear that the conduct complained of does not constitute a violation of that statute. *Rathbun v. United States, reh'g denied,* 355 U.S. 925, 78 S.Ct. 363, 2 L.Ed.2d 355 (1958); *Lopez v. United States,* 373 U.S. 427, 439, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); Comment, "Participant Eavesdropping and the Right of Privacy," 8 Cal.West L.Rev., 283 (1972).

Although the plaintiff's federal claims are easily disposed of, the state claim is more difficult. The Illinois eavesdropping statute makes it unlawful to record a telephone conversation without the consent of one party and at the request of the state's attorney. Ill.Rev.Stat., ch. 38, § 14-2 (1973). A violation of the statute entitles the aggrieved party to recover, in a civil action, actual and punitive damages against the eavesdropper. *Id.* 14-6. The plaintiff argues that since the state's attorney did not request the recording, Section 14-2 was violated and damages are recoverable.

The defendants concede that Section 14-2 was violated, but argue that there

can be no liability since the plaintiff consented to the recording, the recording was justified by the doctrine of necessity, and the recordings were made pursuant to the request of the F.B.I.

■ As previously stated, there were two sets of recordings. The first was made by the defendants while the second was made by the F.B.I. The defendants contend that they were not civilly liable for any of these recordings because the plaintiff knew that the calls were being recorded and consented thereto. A clear manifestation of consent would constitute a good defense. *People v. Ardella,* 49 Ill.2d 517, 276 N.E.2d 302 (1971). The transcript passage upon which the defendants rely to establish consent, however, does not make clear that the plaintiff was giving his consent to the recordings. It is just as probable that he was merely speculating that the conversations were being recorded. Moreover, the defendants do not contend that the plaintiff was ever expressly told of the recordings. Thus, under all the circumstances, there is a genuine issue of fact on the defense of consent.

■ Next, the defendants argue there can be no liability because the recordings were made at the request of the F.B.I. More precisely stated, the argument appears to be that since the recordings were made pursuant to a valid exercise of federal authority, state law could not impose a civil penalty for violation of a state law. In support of this proposition, the defendants rely on cases which hold that evidence obtained by eavesdropping in violation of state law, is admissible in a federal criminal prose-

---

communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State or for the purpose of committing any other injurious act.

3. The plaintiff asserts that the defendants have no privilege under Section 2511 be-

cause they intercepted the communication for the purpose of violating the Illinois eavesdropping statute. A fair reading of the statute, however, requires a construction that the defendants would be culpable only if the illegal act was something other than recording the conversation. *See Rathbun v. United States,* 355 U.S. 107, 109, 78 S.Ct. 161, 2 L.Ed. 134 (157). For example, if the defendants recorded the phone conversations to blackmail the plaintiff, recovery would be permissible.

cution providing there was no concurrent violation of federal statutes or the Constitution. *United States v. Teller,* 412 F.2d 374, 377 (7th Cir. 1969), *cert. denied,* 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971); *United States v. Martin,* 372 F.2d 63, 67 (7th Cir.), *cert. denied,* 387 U.S. 919, 87 S.Ct. 2033, 18 L.Ed.2d 972 (1967); *Ferguson v. United States,* 307 F.2d 787, 790 (10th Cir. 1962), *vac.* 375 U.S. 962, 84 S.Ct. 479, 11 L.Ed.2d 413 (1964); *United States v. Merritts,* 387 F.Supp. 807, 810 (E.D.Ill. 1975). *See* Fed.R.Crim.P. 26. From this it is argued that federal and not state law is applicable to the present case, and thus there can be no liability under state law if the defendants were acting at the specific request of the F. B.I. *See* ABA, Standards Relating to Electronic Surveillance, § 1.1 Commentary, at 105 (1971).

At least one federal court has agreed with the defendants' position. In *Fowler v. Southern Bell Tel. & Tel. Co.,* 343 F.2d 150 (5th Cir. 1965), two federal agents (IRS) were alleged to have tapped the phone line of the plaintiff who subsequently brought an action in the state court for invasion of privacy against the telephone company and the officers. The case was removed to the federal court where plaintiff's motion for summary judgment was granted. Reversing the district court, the court of appeals stated in dictum that if it was established that the two officers were acting in

> "the performance and scope of their official powers and within the outer perimeter of their duties as federal officers, then the defense of privilege would be established as to them. . . . [*Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1960)] In this event the privilege may be extended to exonerate the Telephone Company also if it appears, in line with the allegations of the complaint, that the Telephone Company acted for and at the request of the federal officers and within the bounds

of activity which would be privileged as to the federal officers. Public policy requires no less, for to deny the privilege to those who assist federal officers would conflict with the underlying policy of the privilege itself: to remove inhibitions against the fearless, vigorous, and effective administration of policies of government." *Barr v. Matteo, supra.*

343 F.2d at 156–57.

In the absence of countervailing authority in this circuit,· *Fowler* should be followed and summary judgment granted for the defendants if they were acting at the specific request of the F.B.I. Certainly they were in respect to the recordings made by agent Kusserow. On the basis of the affidavit of Mr. Snell, however, the precise nature of the F.B.I. Agent Treviranus' request is unclear. It appears that he only requested more detailed information about the caller. That does not amount to a request to record subsequent conversations. Thus there is an issue of fact surrounding the issue of whether the first recordings were made at the request of the F.B.I. Accordingly, summary judgment on the defense of immunity or privilege is denied.

■ Finally, defendants urge that they are entitled to summary judgment in respect to the state claims by reason of the statutory defense of necessity. Ill.Rev.Stat., ch. 38, § 7–13 (1973) provides:

> Conduct which would otherwise be an offense is justifiable by reason of necessity if the accused was without blame in occasioning or developing the situation and reasonably believed such conduct was necessary to avoid a public or private injury greater than the injury which might reasonably result ·from his own conduct.

If plaintiff can look to the Illinois eavesdropping statute to render defendants' conduct actionable, defendants must be able to look to the same·statute for a defense.

It cannot be disputed that they were without blame in occasioning the situation which gave rise to the recordings. It was the plaintiff who initiated the contact and in doing so, he placed the defendants in a position where they were about to be victimized by his theft or extortion. Faced with this situation, according to Thaddeus S. Snell, Vice President and General Counsel of USG, defendants believed that the recordings were necessary to avoid the loss of engineering documents and to protect both the company and its officials from further injury. And who is plaintiff, the initial wrongdoer, to challenge that decision? What injury befell him which was greater than that which he sought to inflict upon defendants? In the circumstances presented here, we have no hesitation in concluding that defendants acted out of necessity as that term is used in the Illinois statute which gives rise to plaintiff's claim. Accordingly, we conclude that defendants are entitled to summary judgment on the state eavesdropping claims on the basis of their defense of necessity.

In summary then, Count II purports to allege causes of action under both federal and state eavesdropping statutes. The federal claims are unfounded. The state claims are defeated by the affirmative defense of necessity. Accordingly, defendants' motion for summary judgment on Count II of plaintiff's complaint is granted.

Count IV of the complaint charges the defendants with malicious prosecution of the plaintiff under the Hobbs Act. 18 U.S.C. § 1951 (1970). In *Freides v. Sani-Mode Manufacturing Co.*, 33 Ill.2d 291, 211 N.E.2d 286 (1965), the Illinois Supreme Court enumerated the elements necessary for an action for malicious prosecution.

(1) [T]he commencement or continuance of an original criminal or civil judicial proceeding, (2) its legal causation by the present defendant against plaintiff who was the defendant in the original proceeding, (3) its *bona fide* termination in favor of the present plaintiff, (4) the absence of probable cause for such proceeding, (5) the presence of malice, and (6) damages resulting to plaintiff. Each of these elements must be present. 33 Ill.2d at 295, 211 N.E.2d at 288.

■ The defendants assert that they had probable cause to initiate the criminal proceeding. Plaintiff asserts that summary judgment on the probable cause issue would be inappropriate until he has had an opportunity to take further discovery. *Illinois State Employees Union, Council 34 v. Lewis*, 473 F.2d 561, 565 & n.8 (7th Cir. 1972), *cert. denied*, 410 U.S. 928, 93 S.Ct. 1364, 35 L. Ed.2d 590 (1973); *Andersen v. Schulman*, 337 F.Supp. 177, 179 (N.D.Ill. 1971). In the circumstances presented here, however, it is difficult to comprehend how additional discovery can avoid the clear showing of probable cause for the initiation of the criminal proceeding. We have already held that plaintiff's conduct constituted a violation of the Illinois theft statute, Ill.Rev.Stat., ch. 38, § 16–1 (1973). The grand jury for this district concluded that there was probable cause to believe that plaintiff's conduct constituted extortion under the federal criminal code. 18 U.S.C. § 1951 (1970). The material elements of malicious prosecution under Illinois law, which, of course, is controlling in this diversity action, are stated in the conjunctive. Thus, assuming that defendants acted with malice and that further discovery would establish that fact, plaintiff must still prove that defendants acted without probable cause for the initiation of the criminal proceeding. In light of all the facts here, we have concluded that there can be no dispute that the defendants acted with probable cause as a consequence of which, their motion for summary judgment as to Count IV of plaintiff's complaint should be granted.

*Plaintiff's Motion for Partial Summary Judgment*

■ The plaintiff's motion for partial summary judgment prays that the court order USG to return the $25,000 in cash and the $25,000 certified check seized from the plaintiff at the time of his arrest. In support of the motion, the plaintiff argues that assuming *arguendo* that the contract was illegal, a court will not intervene to enforce an illegal contract or set it aside once it has been executed. *Wiegand v. Wiegand,* 410 Ill. 533, 103 N.E.2d 137 (1952).

This argument assumes too much. First the parties to the alleged contract were not, as a matter of law, *in pari delicto.* The alleged contract was not negotiated by parties dealing at arms length, but by virtue of a threat communicated by plaintiff to the defendants. Under these circumstances the principle upon which plaintiff relies has no application. *County of La Salle v. Simmons,* 10 Ill. 513, 519 (1849).

■ Furthermore, assuming the parties were *in pari delicto,* the plaintiff seeks an order on the defendant USG to pay plaintiff $50,000. Such a request for affirmative relief is in contravention of the plaintiff's own rule.[4] *See International Coal & Mining Co. v. Industrial Commission,* 293 Ill. 524, 533, 127 N.E. 703, 706 (1920). Therefore, the plaintiff's motion for partial summary judgment is denied both because the parties were not *in pari delicto,* and assuming they were, no affirmative relief could be ordered under Illinois law.

*Plaintiff's Motion to Dismiss the Counterclaim or in the Alternative for Summary Judgment*

The defendants have filed a counterclaim alleging that the plaintiff's conduct subjected them to duress, coercion, intimidation and business compulsion. They pray that the alleged contract be declared void[5] and that punitive damages of $100,000 be assessed against the plaintiff, together with costs and attorneys' fees. The plaintiff has moved to dismiss the counterclaim or in the alternative for summary judgment.

■ The plaintiff asserts that the alleged contract was not executed under duress or coercion because at all relevant times the defendants had the assistance of counsel as well as others, such as the F.B.I. and the office of the United States Attorney. What the plaintiff ignores, however, is that the defendants' claim is that the duress consisted of the threats to withhold information regarding the defendants' legal claim to the engineering documents unless the $100,000 was paid. This conduct violated the Illinois theft statute and as a matter of law, constituted duress. See *Slade v. Slade,* 310 Ill.App. 77, 87, 33 N.E.2d 951, 956 (1st Dist. 1941). A contract which is obtained by duress is voidable. *See, e. g., Kaplan v. Kaplan,* 25 Ill.2d 181, 182 N.E.2d 706, 709 (1962). Thus, under the circumstances of the case the defendants are entitled to rescind the contract and seek restitution of the funds paid. This relief is merely cumulative, however, since the defendants have recovered all their property and the court has granted defendants' motion for summary judgment on Count I of the plaintiff's complaint has denied plaintiff's motion for partial summary judgment.

■ The defendants also seek punitive damages and attorneys' fees under the counterclaim. There is no authority for granting punitive damages in an action for rescission of a contract.

---

4. In his reply brief the plaintiff states: "The Plaintiff's motion for partial Summary Judgment is grounded upon the theory that he and the corporation were equally responsible for any illegality in the contract between them and, that being the case, the court ought to leave parties where it finds them."

5. The counterclaim prays that the alleged agreement be declared void, but the defendants' memorandum in opposition to the motion to dismiss states that they are seeking restitution.

*Compare* 13 *Williston on Contracts,* § 1627B at 819 (3d ed. 1970); and *Callner v. Greenberg,* 376 Ill. 212, 33 N.E.2d 437 (1941); *Cockrum v. Keller,* 190 Ill.App. 587, 592 (4th Dist. 1914).[6]  Therefore, plaintiff is entitled to summary judgment on this issue.

  The defendants have also requested an award of attorneys' fees, and the plaintiff has moved for summary judgment on the issue.  Under Illinois law, which is controlling in this diversity action, attorneys' fees are not recoverable by the prevailing party unless the grant is specifically authorized by statute and this attitude obtains in actions at law as well as in equity.  *House of Vision, Inc. v. Hiyane,* 42 Ill.2d 45, 51–52, 245 N.E.2d 468, 472 (1969), *cert. denied, appeal dismissed,* 396 U.S. 8, 90 S.Ct. 26, 24 L.Ed.2d 8 (1969); *Trustees of Schools v. Schroeder,* 8 Ill.App.3d 122, 125–26, 289 N.E.2d 247, 250 (1st Dist. 1972); *Trust Co. of Chicago v. National Surety Corp.,* 177 F.2d 816, 819 (7th Cir. 1949).  The defendants make vague reference in their briefs to the Illinois Securities Act of 1953, Ill.Rev.Stat., ch. 121½, § 137.13 (1973), which provides for an award of attorney fees in some cases.  No cause of action has been pleaded under this statute, however, and therefore its provisions are not applicable.  Even more obliquely, the defendants assert that fees are recoverable since a violation of the federal securities laws may have occurred.  Again, no cause of action has been pleaded under any of the securities acts.  Consequently, the plaintiff is entitled to summary judgment on this issue.  *See Alyeska v. Wilderness*

*Society,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

  In summary, the plaintiff's motion for summary judgment on the counterclaim is denied except as to the issues of punitive damages and attorneys' fees as to which it is granted.  On the court's own motion, it appearing that there are no material issues of fact on the question of duress and in view of the disposition of Count I of the plaintiff's complaint, defendants are granted summary judgment on the issue of duress.[7]

A final judgment in accord with the foregoing will be entered.

---

**6.** In Illinois the law is clear that punitive damages cannot be recovered for breach of contract.  *Miller v. Board of Ed.,* 98 Ill. App.2d 305, 312, 240 N.E.2d 471, 475 (1st Dist. 1968); *Wallace v. Prudential Insurance Co. of America,* 12 Ill.App.3d 623, 629, 299 N.E.2d 344, 349 (5th Dist. 1973).  There is an exception to this rule when a breach amounts to a separate, independent, and wilful tort, which is properly pleaded. Here, however, the defendants have not pleaded a tort action or even one for breach of contract.  The action is for rescission.

**7.** Summary judgment for a non-moving party may be granted on the court's own motion if there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law.  *Pitts v. Knowles,* 339 F.Supp. 1183, 1186 (D.Wis.1972); 6 J. Moore, *Federal Practice,* ¶ 56.12, at 2242 (2d ed. 1974).