JAMES L. BLACKWOOD *v.* STATE OF INDIANA.

[No. 1-972A64.  Filed August 9, 1973.]

*Harriette Bailey Conn (Mrs.)*, Public Defender of Indiana, *Malcolm K. McClintick*, Deputy Public Defender, for appellant.

*Theodore L. Sendak*, Attorney General, *John H. Meyers*, Deputy Attorney General, for appellee.

ROBERTSON, P.J.—Defendant-appellant (Blackwood) was convicted in a jury trial in the Owen Circuit Court on two counts—Attempted Control of Property by Threat, and Violation of the 1935 Uniform Firearms Act. The trial was held in September, 1968. Thereafter, Blackwood filed a petition for post-conviction relief in November, 1969, and a second in September, 1971. Both petitions were denied in December, 1971. Blackwood then filed a petition for permission to file a belated motion to correct errors which was granted. Blackwood brings this appeal from the overruling of his belated motion to correct errors. He asserts that the trial court erred in admitting a .22 caliber pistol into evidence because it was the fruit of an illegal search and that the State failed to establish an essential element of the crime of Attempted Control of Property by Threat.

The facts most favorable to the State show that in May of 1968, a Mr. Claude Heim, a resident of Greene County, Indiana, was robbed at gunpoint of his valuable coin collection. Several days after the robbery Heim received a telephone call from a man who identified himself as George Craig from Indianapolis. Craig was actually the appellant Blackwood. Blackwood informed Heim that he had learned of the robbery from the newspaper and asked Heim if he was interested in getting back the collection. Heim responded that he was. Blackwood said he would phone again in the near future. In the meantime, Heim contacted the Indiana State Police and they installed a device on Heim's phone which recorded Blackwood's subsequent calls to Heim. The recordings of those calls were admitted into evidence. In addition to the phone conversations, Blackwood and Heim met on two separate occasions in the parking lot of a bank in Spencer, Indiana, to negotiate further. During one of the telephone conversations, Blackwood asked Heim how much he was willing to pay for Blackwood's assistance in obtaining the return of the coins. The sum of $5000 was agreed to, but Blackwood later lowered

his fee to $2500. At different points in the conversations and meetings Blackwood indicated he knew the identity of the robbers and the location of the coins. At the conclusion of the second meeting Blackwood was arrested by state police officers and taken to the Owen County jail.

While Blackwood was at the jail, officers searched his car which was left parked at a grocery store near the bank. A .22 caliber pistol was found in the glove compartment. Blackwood contends that the search was illegal. In support, he states that the warrant was invalid, as acknowledged by the trial court, that the search cannot be justified as incident to his arrest because he was at the jail when the search was conducted, and that he did not consent to the search.

Blackwood was given the full Miranda warnings at the jail, after which he was asked for permission to search his car. He gave oral permission but refused to sign the consent form. The interrogating officer also inquired as to the contents of the car to which appellant responded that, among other items, a pistol was located in the glove compartment. Blackwood claims that in view of his express refusal to sign a waiver of rights form, the State's evidence of the oral waiver failed to satisfy its burden of proving a voluntary consent. See *State* v. *Smithers* (1971), 256 Ind. 512, 269 N.E.2d 874; *Shuck* v. *State* (1945), 223 Ind. 155, 59 N.E.2d 124. Blackwood is playing on both sides of the fence. We hold that under these circumstances when the suspect, after being advised of his constitutional rights following arrest, gave oral permission to search his auto but simultaneously refused to sign a written waiver, the oral consent was valid. Of course, such a consent is obviated if "it was procured by fraud, duress, fear, intimidation, or where it is a mere submission to the supremacy of the law." *Muegel* v. *State* (1971), 257 Ind. 146, 272 N.E.2d 617, 620. However, appellant Blackwood has produced no evidence to show that his oral consent was procured by such pressures.

Because we find the evidence sufficient to show valid consent, we need not consider Blackwood's other arguments concerning the validity of the search.

The other issue raised by Blackwood is whether or not the State established that a threat was made within the meaning of IC 35-17-5-14, Ind. Ann. Stat. § 10-3041 (Burns 1972 Supp.), and IC 35-17-5-13-18, Ind. Ann. Stat. § 10-3040 (18) (Burns 1972 Supp.). On cross-examination of Mr. Heim by Blackwood in his own behalf, the following testimony was given:

"Q. Now let me ask you this. Did I threaten you in any way or harm you in any way?
A. Absolutely not."

Blackwood contends this shows no threat was made.

The statutes cited above provide, in part, as follows:

"ATTEMPTED CONTROL OF PROPERTY BY THREAT. A person commits a crime when he knowingly: (a) demands by threat control over property of the owner or a signature to any written instrument; or (b) threatens a person with intent thereby to obtain or exert control over property of the owner or to obtain a signature to any written instrument." IC 35-17-5-14-1, Ind. Ann. Stat. § 10-3041 (1), (Burns 1972 Supp.),

and

"DEFINITIONS. (18). 'Threat' means a menace, however communicated, to: (a) inflict physical harm on the person threatened or any other person or on property; or . . . (i) testify or provide information or *withhold* testimony or *information with respect to another's legal claim* or defense. . . ." IC 35-17-5-13-18, Ind. Ann. Stat. § 10-3040 (18), (Burns 1972 Supp.), (emphasis added).

It is clear that under the statute a "threat" includes more than an offer to inflict physical harm. It can be an offer to withhold information with respect to another's legal claim. That Heim had a legal claim in his stolen coin collection can-

not be seriously disputed. In addition, the evidence shows that Blackwood possessed knowledge about that coin collection. On direct examination, Mr. Heim testified that Blackwood "said that these coins were stored at a car dealer near where his place of business was. He knew right where the coins were setting. . . ." A tape recording of the second telephone conversation between Heim and Blackwood was placed in evidence, and shows that Blackwood stated "I'm absolutely positive I know the ones that done it. . . ." Further, it must be shown that Blackwood communicated a menace to withhold that information. In another recorded phone conversation, also admitted into evidence, Blackwood stated:

> "Well, here's the thing about it, I can point you directly to your coin collection and the guys that come in there, and if I done this, if I done that satisfactorily to you, what would it be worth to you?"

In addition, Heim testified:

> "He [Blackwood] asked me what it would be worth to get my coins back, and I said, 'Well, how would a thousand dollars be,' and 'Oh', he says 'I wouldn't touch them for that.' He said, 'I've got to protect myself.' He said, 'It would take at least five.' "

The evidence is such that a reasonable inference can be drawn therefrom by the trier of fact that Blackwood would withhold the information concerning the coin collection unless Heim met his money demands. Compare *King* v. *State* (1968), 249 Ind. 699, 234 N.E.2d 465 with *Tubbs* v. *State* (1967), 249 Ind. 325, 232 N.E.2d 360.

We are of the opinion that Blackwood's actions did constitute a demand by threat to control the property of Heim, that property being the $2500 demanded in exchange for the information.

Judgment affirmed.

Lowdermilk and Lybrook, JJ., concur.

NOTE.—Reported in 299 N.E.2d 622.