STANLEY RAY COOPER *v.* STATE OF INDIANA.

[No. 2-1272A140. Filed October 11, 1973. Rehearing denied November 8, 1973. Transfer denied February 4, 1974.]

*Ferd Samper, Jr., Ferdinand Samper, Sr.,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

SULLIVAN, J.—Defendant-appellant Cooper was convicted of theft and of violation of the 1935 Firearms Act, as charged in two counts of a three count affidavit. The theft count involved Cooper's obtention and control over property stolen from the premises of one Ronald K. Trimble, d/b/a Westside Auto Parts. At the time of his arrest, an unlicensed pistol was found upon his person which fact resulted in his conviction on the other count.

Cooper contends upon appeal that the items identified as stolen and seized from the trunk of his automobile were the product of an unlawful search. He likewise attacks the admissibility of the pistol taken from his person at the time of his arrest. Additionally he contends that testimony with

respect to incriminating statements made by him were improperly admitted in that the Miranda warnings given were incomplete and that the ten year determinate sentence imposed upon the firearms conviction was erroneous because not assessed until after a presentence investigation.

No evidence was submitted by or in Cooper's behalf. The evidence most favorable to the State discloses that on the morning of January 6, 1972 in Indianapolis, Sterling Trimble, manager of Westside Auto Parts, which was owned by his son Ronald Trimble, opened the store and found that the back door had been pried open. On checking the stock, he discovered that four transmissions, a battery charger, four mag wheels, some new tape players, and some tools were missing.

On the morning of January 14, 1972, Detectives Jones and Bugg received information from an informant who had given reliable information in the past. The informant told them that Cooper had the stolen merchandise in a 1962 Chevrolet convertible, giving the license number.

The detectives went to an address where Cooper was believed to be living but failed to find him there. The detectives then proceeded to the vicinity of the Westside Auto Parts and found the car mentioned by the informant parked across the street from the store headed the wrong way. Sgt. Jones went in the auto parts building and asked if anyone there owned the car across the street. Cooper came forward and acknowledged ownership of the car. Jones informed him it was parked on the wrong side of the street and that he would like to discuss the car with him. The two went out to the car and Bugg asked Cooper for the registration certificate for the car, since the plate was registered to another automobile. Cooper unlocked the car and produced the title to the car and registration for another car informing the detectives that he had traded cars.

Jones then told Cooper that he had information that the trunk of the car contained stolen property, enumerating the

items that had been stolen from Westside Auto Parts, and advised him that he did not have to answer any questions and that he had the right to have a lawyer. Jones also advised him he did not have to let them search the car, but could require them to get a search warrant. Cooper stated he knew that, but had nothing to hide and denied such items were in the car. Jones asked him if he would unlock the trunk of the car. Cooper stated that he didn't have a key to the trunk. At Bugg's request, defendant tried to unlock the trunk with the door key, but failed. Bugg asked if he would let him try and Cooper handed the keys to him. Bugg found the right key and opened the trunk, which contained the stolen items. Then Cooper was told he was under arrest for receiving stolen property and again advised of his rights against self-incrimination.

Mr. Trimble was brought out to the car and identified the items in the car trunk as those stolen from Westside Auto Parts. Cooper said he had bought the items from another man for $300.00 and knew they were stolen. He stated he was bringing them back to Mr. Trimble but just did not have the nerve at that time to return them to him. Cooper was searched at the scene following his formal arrest and an unlicensed fully loaded pistol was found in his right hand jacket pocket.

## CONSENT VALIDATED WARRANTLESS SEARCH OF AUTOMOBILE

It is appellant's position that the items seized from the trunk of his automobile and identified as having been stolen from the premises of Robert K. Trimble, d/b/a Westside Auto Parts, were erroneously admitted into evidence. Appellant argues that the search and seizure was unlawful. He contends that there was ample time and opportunity to obtain a search warrant and that the search and seizure was not made pursuant to a lawful arrest. We need not consider such

assertions, however, for the evidence demonstrates that the defendant consented to the search of his automobile.

The evidence heretofore recited justifies such holding notwithstanding appellant's argument that the alleged consent was not freely and voluntarily given and constituted mere "passive" submission as found and condemned in *Sayne* v. *State* (1972), 258 Ind. 97, 279 N.E.2d 196.

The evidence here indicates that Cooper freely and voluntarily surrendered his key ring, containing the trunk key, when asked by the detective whether Cooper minded if the officer tried to open the trunk. In doing so, Cooper said "no, go right ahead." The *Sayne* decision is thus distinguished.

*Blackwood* v. *State* (1973), 157 Ind. App. 296, 299 N.E.2d 622 is applicable. As in *Blackwood*, we hold that Cooper's oral consent to the search of the automobile trunk was voluntary and that the record contains no hint that such consent was obtained by force, fraud, duress, fear, intimidation or mere submission to the supremacy of the law. To the contrary, the evidence discloses that Cooper was advised of his right to remain silent, his right to counsel and his right to require the officers to obtain a search warrant. Cooper's consent under such circumstances constituted a relinquishment of his Fourth Amendment rights.

Our holding is well within the constitutional guidelines for consent searches set forth most recently in *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, 93 S. Ct. 2041, 41 L.W. 4726—even those which would be imposed by the dissent of Justice Marshall.

The court there held:

"[T]he question whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." 93 S. Ct. at 2047-48.

## SEIZURE OF PISTOL AS INCIDENT TO LAWFUL ARREST WAS PROPER

Following the search of Cooper's automobile trunk and discovery of the items identified as stolen, he was placed under formal arrest. When Cooper's person was then searched, revealing the pistol, the seizure of the weapon was proper and its admission into evidence valid. *Holloway* v. *State* (1973), 157 Ind. App. 496, 300 N.E.2d 910; *Mentzer* v. *State* (1973), 156 Ind. App. 291, 296 N.E.2d 134.

## APPELLANT'S CLAIM THAT INSUFFICIENT MIRANDA WARNINGS RENDERED INCRIMINATING STATE-MENT INADMISSIBLE IS REJECTED

Detective Jones testified at trial that Cooper admitted that he knew the items discovered in his automobile trunk were stolen. Upon appeal, Cooper asserts that such incriminating statement was inadmissible because the Miranda warnings given prior to his comment concerning knowledge of the theft were incomplete. Cooper does not, however, attempt to enlighten us by pointing out in what respect he deems such warnings to have been deficient.

Be that as it may, the record reflects the following testimony by Detective Jones concerning the situation immediately before the trunk of the automobile was opened:

"* * * At this time I advised Stanley Ray Cooper that we had information that he had certain items of stolen property in the trunk of his car. I advised him that it was a battery charger, four mag wheels, four four-speed transmissions, and a couple of tool boxes. I advised him that he did not have to answer any questions, that he had a right to have a lawyer. And also I advised him that he did not have to let us search the trunk of his car without a search warrant, that he could require us to get a search warrant to search any part of his automobile. * * *"

After the opening of the trunk, Cooper was again advised:

"* * * Again, we advised him of his right to remain silent and he didn't have to say anything to us and anything he said would be used against him in court. * * *"

The dictates of *Miranda* v. *Arizona* (1966), 384 U.S. 436, 86 S. Ct. 1602 require that custodial interrogation be preceded by warnings that the individual has a right to remain silent, that any statement made may be used as evidence against him and that he has the right to the presence of an attorney, either retained or appointed. The only significant part of the Miranda requirement absent from the warnings given to Cooper is the right of an indigent to have an attorney appointed for him by the court. Since he subsequently employed an attorney and never at any time asked the court to provide an attorney at public expense, he was obviously not indigent. Such omission therefore could not have harmed him.

We note further that the particular inculpatory statement challenged here was made spontaneously and not as the result of any questions put to him by the investigating officers. As stated in the *Miranda* decision:

"Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 86 S. Ct. at 1630.

We therefore reject appellant's contention in this regard.

## DETERMINATE SENTENCE IMPOSED BY TRIAL COURT SUBSEQUENT TO FINDING OF GUILT NOT ERRONEOUS

Appellant contests the imposition of his 10 year determinate sentence for violation of the Firearms Act upon the ground that it was not immediately assessed following conviction but was delayed some twenty days until completion and submission of the pre-sentence report. His reliance is placed upon IC 1971, 35-8-2-1, Ind. Ann. Stat. § 9-1819 (Burns 1956) which provides:

"When the defendant is found guilty the jury, except in the cases provided for, in the next [two] sections,[1] must state, in the verdict, the amount of fine and the punishment to be inflicted; where the plea is guilty, or the trial is by the court, the court, subject to the same exception, shall assess the amount of fine and fix the punishment to be inflicted."

It is Cooper's contention that § 9-1819 requires the court after trial without a jury to incorporate the sentence in the finding of guilt. He further asserts that the pre-sentence report required by IC 1971, 35-8-1-2, Ind. Ann. Stat. § 9-2252 (Burns 1972 Supp.) is solely for commitment purposes, i.e., suspension or probation, and that it can have no relevance to the determinate sentence imposable.

The pertinent portion of the latter statute reads as follows:

"No defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and considered by the sentencing court. Whenever precommitment investigation is required, the probation officer making the investigation shall inquire into the circumstances of the offense and shall make such investigation as is prescribed by the state probation director of the department of correction. All local and state police agencies shall be required to furnish to the probation officer such records as the probation officer may request. Where in the opinion of the sentencing, court, or the investigating authority, it is desirable, the precommitment investigation may include a physical and mental examination of the defendant. If a defendant is thereafter committed to any penal and correctional institution the investigating agency shall send a written report of its precommitment investigation to the penal institution at the time of commitment."

Cooper equates the "duty" of a trial court in this respect with that of a jury in similar instances. He argues that since a jury must necessarily look only to the evidence in assessing the penalty where a determinate sentence is required, a judge without a jury should have no greater privilege with respect

---

1. The two sections excepted deal with indeterminate sentences.

to the factors or considerations available in making such determination. This argument contains much logic but is more likely to bear fruit, if at all, when a conviction and penalty as fixed by a jury, is attacked upon the premise that the pre-sentence report is essential to a proper determination of an appropriate determinant sentence in that it contains relevant factors not disclosed by the evidence alone.

The statutory provisions referred to, if construed together, appear inconsistent with respect to jury verdicts and would tend to bear out appellant's argument that pre-sentence reports are not relevant to the particular determinate sentence to be imposed but are to be considered only with respect to probation or suspension of sentence. When trial is had by jury, the penalty, which is required to be imposed by them, is necessarily affected only by the evidence adduced at trial. It cannot reflect matters contained in the pre-sentence report.

While this court might at some future time be called upon to determine the viability or validity of the statutory provision which requires juries to assess the penalty for offenses calling for determinate sentences without regard to the unqualified requirement that pre-sentence reports be considered in the commitment process, such question is not now before us. It would seem, however, that where the statute requires a determinate sentence within a maximum-minimum range, it is advisable, if not necessary, that a pre-sentence report be considered in a determination of the particular determinate sentence to be imposed. Such, of course, militates against or eliminates the jury as the appropriate penalty fixing agency.[2]

---

2. For a comprehensive treatment of the inadequacies and obsolescence of "jury sentencing", see Note *Jury Sentencing in Virginia*, 53 Va.L.Rev. 968 (1967). And as noted in the Comments accompanying the A.B.A. Standards on Sentencing Alternatives and Procedure § 1.1 (b) (Approved Draft 1968 at pp. 46-47):

"It is also clear that sentencing by the jury is inconsistent with the principle that the sentencing decision should be based upon complete

A resolution of the incongruity of a statute making the jury the determinant of the penalty to be imposed, vis a vis utilization of information for sentencing purposes as contained in pre-sentence reports, need not however be made here. Regardless of the answer to the dilemma of statutory or constitutional construction, the fact is that we are here concerned with a finding of guilt by the trial court without a jury.

We are not therefore impelled to hold that a trial court must disregard information contained within a pre-sentence report in imposing a determinate sentence. To hold otherwise would encourage immediate imposition of a maximum penalty subject only to suspension and would deprive a particular defendant of the possibility that a trial court would take into consideration matters contained in the pre-sentence report and impose a determinate sentence of lesser duration than the maximum.

Our view is not without some inferential support as drawn from Indiana case law. *Smeltzer* v. *State* (1962), 242 Ind. 437, 185 N.E.2d 428 involved a conviction of receiving stolen goods which at the time, if the goods were of the value of less than $25.00, was punishable by a determinate sentence

---

information about the defendant himself as well as his offense. Much of the information most helpful at the sentencing stage is properly inadmissible on the question of guilt, and to admit it only on the question of sentence is highly prejudicial if the jury is to consider both questions at the same time. Separation of the questions, on the other hand, involves separate trials, a time consuming and costly venture that presents little gain in compensation.

\* \* \*

"But clearly the most telling argument against jury sentencing is that a proper sentencing decision calls on an expertise which a jury cannot possibly be expected to bring with it to the trial, nor develop for the one occasion on which it will be used. The day is long past when sentencing turned solely on the degree of moral approbation which the offense commanded. An enlightened sentencing decision today calls for a sophisticated and informed judgment which takes into account a vast range of additional factors, from the likelihood that the defendant will commit other crimes to the types of programs and facilities which may induce a change in the pattern of activity which led to the offense."

not to exceed one year. Ind. Ann. Stat. § 10-3017 (Burns 1956).[3] The court in that case did not immediately sentence the defendant but deferred such sentencing pending the report of pre-commitment investigation. To be sure, the stolen property in *Smeltzer* exceeded $25.00 in value which called for an indeterminate sentence (Burns § 10-3017 *supra*). The court unqualifiedly and without limitation, however, held that the postponement of sentence was mandatory until such time as a written pre-commitment report was presented to and considered by the sentencing court.

In *Ware* v. *State* (1963), 243 Ind. 639, 189 N.E.2d 704, the court reversed a judgment sentencing the defendant because the trial court had not delayed judgment until a pre-sentence report had been received and considered. Although in *Ware*, the penalty was an indeterminate sentence, we see no valid cause for treating such distinction as a basis for holding the sentence here invalid. The pre-commitment investigation statute does not differentiate between felonies calling for determinate sentences and those calling for an indeterminate sentence. It quite clearly states:

> "*No* defendant convicted of a felony shall be committed by any criminal court of record before a written precommitment investigation report, prepared by a probation officer, is presented to and *considered by the sentencing court.*"

Notwithstanding what may appear to be a preclusion of the use of pre-sentence investigation reports in convictions by jury which require a determinant sentence except as to suspension or probation, consideration of such report by a court acting without a jury would be hollow and meaningless indeed if it could not be used to assist the court in exercising its statutory discretion as to the particular determinant sentence permissible within a minimum-maximum range.

Appellant has not shown nor could he show that he is

---

3. This section [§ 10-3017] concerning stolen goods was repealed by Acts 1963 (Spec. Sess.), ch. 10, § 14. For new law see § 10-3028—10-3041 (Burns 1972 Supp.).

legally entitled to a lesser determinant sentence than that which was imposed. The imposed sentence was within the range authorized by statute. It will not therefore be set aside merely because the trial court followed the mandate of the pre-sentence investigation statute and perhaps considered the information contained therein in addition to the evidence concerning commission of the offense.

As hereinbefore noted, appellant has not demonstrated error. The judgment is therefore hereby affirmed.

Buchanan, P.J. and White, J., concur.

NOTE.—Reported at 301 N.E.2d 772.