THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* THEODORE PARISH, Defendant-Appellant.

First District (3rd Division) No. 79-234

Opinion filed April 9, 1980.

Ralph Ruebner and Fe Fernandez, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Iris E. Sholder, and Bruce Rose, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Theodore Parish, was charged with the attempt murder and aggravated battery of Garfield Johnson. After a trial without a jury, defendant was found guilty of attempt murder and received a sentence of 25 years. The trial court found his co-defendants, David Latimer and Ricky Bell (neither of whom is involved in this appeal), not guilty of attempt murder but guilty of aggravated battery. Latimer and Bell received sentences of four and five years, respectively. Another co-

defendant, Orville Miller, was tried separately and is not involved in this appeal.

Defendant contends on appeal that he was not proved guilty beyond a reasonable doubt; that the introduction of evidence of unrelated crimes deprived him of a fair trial; that the trial court's failure to explain the difference between two applicable codes of sentencing deprived him of the right to make an intelligent election between the sentencing law at the time of the offense and the law in effect at the time of sentencing; and that, in light of co-defendants' sentences, defendant's sentence was excessive.

On November 8, 1975, at approximately 8:30 p.m., Garfield Johnson was shot and seriously wounded. As a result, he was totally paralyzed from the waist down. It was stipulated that he was shot eight times, four times in the front part of his body and four times in the back. At trial, he stated that defendant and Miller were the men who shot him.

When the State offered the testimony of Opal Johnson, Garfield's sister, defendant objected that her testimony would bring out evidence of unrelated crimes against defendant. Defendant also made a motion to strike her testimony. The State made an offer of proof that the crimes committed against the sister would explain the initial confrontation between defendant and Johnson. The trial court ruled that Opal's testimony would be received conditionally, subject to defendant's motion to strike the testimony.

Opal Johnson testified that on the evening in question, at about 6 p.m., she encountered defendant in a park. She knew defendant as Teddy. They walked a short way until defendant displayed a flat, dark gun and took $30 from her. Defendant then forced her into the foyer of a nearby building and made sexual advances. She rebuffed him, and he eventually allowed her to leave. Opal arrived home at about 6:30 or 7 p.m. and told her brother that defendant had taken money from her at gunpoint. She did not tell him about the sexual advances defendant had made. After defense counsel cross-examined Opal, he informed the court he was withdrawing his motion to strike her testimony.

Garfield Johnson testified that after his sister told him about the robbery, he said he would try to get the money back. He then went out, but was not looking for defendant and was not carrying a weapon. He found his girlfriend at his friend's home and, at about 8:20 p.m., he and the friend walked to a nearby liquor store. Johnson saw defendant standing outside the store, while Latimer sat in a nearby parked automobile. Johnson asked defendant to return the $30 he had taken from Opal. When defendant made no reply, Johnson searched him without finding the money or the gun.

Johnson walked across the street and made a purchase in a candy store. When he emerged from the candy store, defendant, Latimer, Bell

and Miller were standing there. Johnson was acquainted with defendant, whom he knew as Teddy, for several months. The four men followed Johnson for a short distance. Miller then came up from behind and shot Johnson in the left shoulder. Latimer and Bell grabbed Johnson and forced him, face down, across the hood of a parked automobile. At that moment, defendant and Miller began shooting him. Latimer and Bell did not fire shots. Johnson at first testified that he did not actually see defendant firing shots since he was face down. He subsequently testified that after being shot several times, he slid off the vehicle and turned toward the four men. He then saw defendant firing the gun; defendant fired more than once. Johnson also testified that after being shot several times he grew weak and did not remember things as well. The four men left in Miller's automobile.

Investigator James Doyle of the Chicago police department testified for the State that, along with another officer, he came upon the scene a few minutes later. The officers took Johnson to the hospital. En route, Johnson was asked who had shot him, and he replied, "Bimbo [Miller] and Latimer." Johnson started to say something else but lapsed into unconsciousness.

Officer Peter Dignan of the Chicago police department testified for the State that he subsequently had a conversation with Johnson at the hospital. Johnson told the officer that he had been shot by Bimbo, Teddy, Bell and Latimer. The officer was asked on cross-examination whether, when asked the same question at preliminary hearing, he had answered in part, "a male Negro known as Teddy Wright." Dignan stated that he remembered the question but that the answer must be in error since the name "Wright" never entered the investigation.

We initially consider defendant's contention that the introduction into evidence of other crimes committed by him deprived him of a fair trial. In making this argument, defendant refers to Opal Johnson's testimony concerning the armed robbery and attempt rape committed by defendant earlier on the same evening the crime with which he was charged occurred.

As we have noted, defendant originally objected to admission of and moved to strike the testimony of Opal Johnson. After the State made an offer of proof as to the purpose of the testimony, the trial court ruled that the testimony would be admitted conditionally, subject to the motion to strike. When the prosecutor completed direct examination of Opal, defense counsel cross-examined her in detail concerning her encounter with defendant. At the conclusion of the cross-examination, defense counsel expressly withdrew his motion to strike Opal's testimony.

■■ We believe that defense counsel, in explicitly withdrawing the motion to strike Opal's testimony, assented to the admission of her

testimony and waived any claim of error. (See *People v. Arnold* (1963), 27 Ill. 2d 294, 189 N.E.2d 241; *People v. Haywood* (1978), 60 Ill. App. 3d 236, 376 N.E.2d 328, *cert. denied* (1979), 440 U.S. 948, 59 L. Ed. 2d 292, 99 S. Ct. 2852.) This is particularly true here since the court in this bench trial had ruled that her testimony would be received conditionally, subject to defendant's motion to strike the testimony. After Opal testified, there was not only a failure by defendant to renew the motion, but the motion was withdrawn. Defendant cannot now complain.

Defendant also contends that because of contradictions in Johnson's testimony and statements defendant was not proved guilty beyond a reasonable doubt. In making this argument, defendant stresses several points: that en route to the hospital, Johnson told the police officers Miller and Latimer shot him; that Johnson subsequently told another officer four men shot him; that at trial Johnson testified defendant and Miller were the men who fired the shots; and that at first he testified he did not see defendant actually firing the gun, but subsequently explained that after he had been shot several times he did see defendant fire the gun.

■■ ■ An examination of the record reveals that Johnson, with one exception, consistently stated that all four men were involved in the commission of the crime. While being taken to the hospital immediately after sustaining severe injuries, he named only Miller and Latimer as the offenders. We note, however, that he lapsed into unconsciousness after naming the two men. In his other statement and at trial, Johnson stated that the four men participated in the crime. Johnson stated that defendant and Miller were the men who fired the shots. He stated that Latimer and Bell forced him onto the hood of the vehicle, but did not fire shots. Johnson explained that he did not see defendant, whom he knew for several months, firing the gun until he slid off the vehicle after being shot several times. Defendant was shot in the back four times and in the front part of his body four times. It is evident that during part of the attack, he faced his attackers. Johnson was a credible, positive and lucid witness whose testimony was sufficient to support the conviction. In a trial without a jury, the court's determination concerning the weight and credibility to be afforded the testimony of any witness will not be disturbed on review unless palpably erroneous. (*People v. Arndt* (1972), 50 Ill. 2d 390, 280 N.E.2d 230; see *People v. Nichols* (1975), 32 Ill. App. 3d 265, 336 N.E.2d 194.) Discrepancies and contradictions in testimony do not destroy the credibility of an eyewitness, but only go to the weight to be afforded to the testimony. (See *People v. Nuccio* (1973), 54 Ill. 2d 39, 294 N.E.2d 276; *People v. Bergeron* (1973), 10 Ill. App. 3d 762, 295 N.E.2d 228.) We cannot say that the trial court erred in believing the testimony of Garfield Johnson.

We next consider defendant's contention that the trial court's failure

to explain to defendant that he could elect to be sentenced under either the old or new statute deprived defendant of his right to make an intelligent choice between the two alternatives, and thus the sentence must be vacated.

Defendant, Bell, and Latimer all had the same counsel and had the same sentencing hearing. At that hearing, the trial judge stated that the three men had the right to be sentenced under either the old or new code. At that point defense counsel requested and was granted a recess so that he might speak to his clients. When the conference was completed, defense counsel informed the court that his clients had been advised of their rights under the old and new statutes, and that all three men elected to be sentenced under the new code.

■■ ■ A defendant must be given an opportunity to elect whether he wishes to be sentenced under the law in effect at the time the offense was committed or under the law in effect at the time of sentencing. (*People v. Davis* (1976), 36 Ill. App. 3d 904, 344 N.E.2d 736; Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1008—2—4(b).) There is no requirement that the advice given to defendant by the court or counsel concerning sentencing election be detailed and made a part of the record, particularly in the absence of a charge of inadequate or improper advice. (*People v. Edwards* (1979), 76 Ill. App. 3d 228, 394 N.E.2d 1391.) In *Edwards*, this court found that defense counsel stated on the record that he had previously explained to defendant the difference between the codes and how that choice would affect defendant. Accordingly, the court ruled that defendant had been adequately advised of his sentencing election. In the present case, the trial court informed defendant of his right of election and, after a conference with defense counsel concerning sentencing alternatives, defendant made a choice of which code he wished to be used. This procedure was in full compliance with the law. In *People v. Durham* (1979), 75 Ill. App. 3d 331, 394 N.E.2d 67, the court stated that it might be well for the trial court to advise defendant of the different sentencing alternatives, but pointed out that nothing in the statute mandates such a procedure. See also *People v. Peoples* (1979), 71 Ill. App. 3d 842, 390 N.E.2d 554.

■■ Defendant finally contends that, in light of Bell's and Latimer's sentences, his sentence of 25 years was excessive. Similarly situated defendants may not receive grossly disparate sentences. (*People v. Henne* (1973), 10 Ill. App. 3d 179, 293 N.E.2d 172.) The issue of disparate sentences arises, however, only when the differing sentences are imposed for the same offense. See *People v. Hill* (1978), 65 Ill. App. 3d 879, 382 N.E.2d 881.

■■ In the present case, defendant was convicted of attempt murder, while Latimer and Bell were convicted of aggravated battery. Moreover,

the participation of the three men was not similar. Defendant shot Johnson while Bell and Latimer grappled with him. There exists no gross disparity in the sentences received by Bell and Latimer which would require a reduction of defendant's sentence.

Defendant was one of the triggermen in a savage and senseless ambush which resulted in permanent and crippling injuries to a defenseless young man. The trial court did not abuse its discretion in the sentence it imposed on defendant. *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

For the reasons stated, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

SIMON and RIZZI, JJ., concur.