BILLY ALFRED SMOOT

*v.*

ARTHUR L. MCKENZIE, *Warden,*

WEST VIRGINIA PENITENTIARY, *etc.*

(No. 14294)

Decided May 5, 1981.

*Weaver, Hayes & Moredock, W. C. Weaver & Charles M. Moredock,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *S. Clark Woodroe,* Assistant Attorney General, for defendant in error.

PER CURIAM:

By order entered November 29, 1977, the Circuit Court of Kanawha County denied Billy Alfred Smoot's petition for habeas corpus relief. Mr. Smoot had alleged that a forty-year sentence for armed robbery imposed upon him by the Circuit Court of Kanawha County was unconstitutionally disproportionate to the sentences imposed upon his co-defendants. In this appeal he contends that the circuit court erred in rejecting his assertion. We conclude that the record developed during the habeas corpus proceeding is inadequate for us to decide whether Mr.

Smoot's sentence was disproportionate. We, therefore, reverse the decision of the circuit court and remand this case with directions that the factual points relevant to the question of proportionality be more fully developed.

The appellant, Mr. Smoot, was indicted with Gary Young, Max Moore and Robert Brooks for the armed robbery of a Kentucky Fried Chicken store located in Charleston. Gary Young, Max Moore, and Robert Brooks, pursuant to plea-bargaining agreements, pled guilty to lesser-included offenses under the indictment. The appellant refused to plead guilty and instead elected to stand trial.

At the appellant's trial a co-defendant, Gary Young, testified in behalf of the State. At the conclusion of the trial the jury found the appellant guilty and subsequently the trial court sentenced the appellant to forty years in the state penitentiary. Co-defendant Gary Young, who had turned State's evidence, was placed on probation, and two other co-defendants, Max Moore and Robert Brooks, who had pled guilty to unarmed robbery, were sentenced to from five to eighteen years in the state penitentiary.

It is impossible to say from the transcript of the appellant's trial what factors the trial court considered in sentencing the appellant. Moreover, the habeas corpus record was not adequately developed to show what possible factors might be relevant to the length of the sentence. The habeas corpus proceeding does suggest that the appellant, prior to the time of the finding of the indictment in this case, had been convicted of unarmed robbery growing out of an unrelated incident. Following that conviction he had been placed on probation. There was also some indication that co-defendants Max Moore and Robert Brooks had prior criminal records. Pre-sentence investigation reports prepared on the co-defendants, and an earlier one prepared on the appellant, however, were not introduced at the habeas corpus hearing.

In *State v. Houston*, ____ W. Va. ____, 273 S.E.2d 375 (1980), we recognized that under our constitutional proportionality principle contained in Article III, Section 5, of the West Virginia Constitution, the term of an armed robbery

sentence could be reviewed to determine if it was disproportionate: "Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment to the United States Constitution, has an express statement of the proportionality principle: 'Penalties shall be proportioned to the character and degree of the offence.' " Syllabus point 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980).

*Houston* addressed factors that would bear on the appropriateness of the sentence by referring to *W.Va. Code,* 62-12-7 and quoting from *People v. Adkins,* 41 Ill.2d 297, 300-01, 242 N.E.2d 258, 260-61 (1968), part of which stated:

> "It [the court] may look to the facts of the [crime], and it may search anywhere, within reasonable bounds, for other facts which tend to aggravate or mitigate the offense. In doing so it may inquire into the general moral character of the offender, his mentality, his habits, his social environments, his abnormal or subnormal tendencies, his age, his natural inclination or aversion to commit crime, the stimuli which motivate his conduct, and, as was said in *People v. Popescue,* 345 Ill. 142, 177 N.E. 739, 77 A.L.R. 1199, the judge should know something of the life, family, occupation and record of the person about to be sentenced."

There is also authority for the point that another factor for inquiry is whether co-defendants who are similarly situated have received grossly disparate sentences. *E.g., Troyer v. State,* Alaska, 614 P.2d 313 (1980); *People v. Parish,* 82 Ill. App. 3d 1028, 403 N.E.2d 725 (1980); *People v. Johnson,* 71 Ill. App. 3d 143, 388 N.E.2d 1320 (1979); *Com. v. McQuaid,* 273 Pa. Super. Ct. 600, 417 A.2d 1210 (1980). However, these and other cases recognize that where the co-defendants differ in their criminal backgrounds or in their role or participation in the offense, disparate sentences are justified. *Walls v. State,* Ala. Cr. App., 378 So.2d 1186 (1979); *People v. Mikel,* 73 Ill. App.3d 21, 391 N.E.2d 550 (1979); *People v. Crutcher,* 72 Ill. App.3d 239, 390 N.E.2d 571 (1979); *State v. Fraser,* N.H., 411 A.2d 1125 (1980); *State v. Coe,* S.D., 286 N.W.2d 340 (1979).

We recognize that at the time of the habeas corpus hearing neither counsel nor the trial court had the benefit of our *Houston* opinion. Consequently, the necessity of an adequately developed factual record showing factors that are relevant to the length of the sentence was not fully understood.

Where the claim is made, as here, the petitioner's sentence is disparate to that of his co-defendants the record should reflect their background. Such a record would necessarily include any presentence reports prepared on the appellant and the co-defendants, information regarding the sentences previously imposed on the appellant and the co-defendants, information showing whether those sentences were the result of plea-bargaining, whether any of the co-defendants had previously been placed on probation, why previous charges were nolled and any facts which would relate to the degree of culpability of each party in regard to the commission of the crime for which the appellant was last convicted. It seems hardly necessary to state that the burden of producing such a record rests with the petitioner since he is challenging his sentence.

For the reasons stated, we reverse the judgment and remand the case for development of a record in light of *Houston* and the matters set out herein.

*Reversed and Remanded*