294 S.E.2d 281

**STATE of West Virginia**

v.

**Fred Michael BUCK.**

**No. 15012.**

Supreme Court of Appeals of West Virginia.

July 15, 1982.

**430**

Hugh Rogers, Jr., Kerens, for appellant.

Chauncey H. Browning, Jr., Atty. Gen. and Silas B. Taylor, Asst. Atty. Gen., Charleston, for appellee.

MILLER, Chief Justice:

This is a criminal appeal from an aggravated or armed robbery[1] conviction sentencing the defendant, Fred Michael Buck, to seventy-five years in prison. A number of errors are assigned but we find them not to constitute reversible error but do remand the case for reconsideration of the determinate seventy-five year sentence.

On October 9, 1978, the defendant and James H. Richards entered the store of Fred Kerns of Job and requested some soft drinks. When Mr. Kerns turned to enter the storeroom to get the soft drinks he was struck from behind and robbed of $1,210.12. The two men made their getaway in a blue early model Chevy. An all-points bulletin was issued shortly thereafter by the State Police.

Approximately an hour later, the Police Chief of Thomas, West Virginia, stopped a car driven by the defendant and owned by the passenger, Richards. The car was stopped for driving thirty-seven miles an hour in a twenty-five mile speed zone within the Thomas city limits. The police chief remembering the all-points bulletin asked the men to follow him to the City Hall for questioning. The men were then questioned by two deputy sheriffs and three state troopers. The police claim that the defendant when asked for his identification told them to get it from his jeans in the back seat of the car. The defendant asserts that he had previously given his identification to the police chief when he was initially stopped. The police on going to the car discovered a club on the back floor of the car and paper money on the front floor. Codefendant Richards orally confessed to the crime.

The defendant was taken to the Randolph County Jail at Elkins where he was subsequently identified in a lineup by Barbara Tingler, an arriving customer at the store as the robbers were leaving. The defendant was also identified in a photographic lineup by Mr. Kerns. The defendant was then tried and convicted for aggravated robbery in the Circuit Court of Randolph County.

The defendant asserts numerous assignments of error in his initial petition to this Court, however, he argues only six in his final brief.[2] They are: (1) the prosecuting

---

1. In *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), we suggested use of the term "aggravated robbery" in lieu of "armed robbery" because it more accurately reflected the wording of our robbery statute, W.Va.Code, 61–2–12. We use the term "aggravated robbery" in this opinion.

2. Pursuant to our established rule, we limit our consideration of this case to those arguments fully developed and argued and exclude others listed in the initial petition. *Laurie v. Thomas*, 170 W.Va. 276, 294 S.E.2d 78 (1982); *Addair v. Bryant*, 168 W.Va. 306, 284 S.E.2d 374 (1981);

attorney's failure to disclose a part of the codefendant's confession to the defendant denied him due process of law; (2) the search of the car and admission of evidence seized from it violated the defendant's Fourth Amendment constitutional rights; (3) the lineup held without the presence of counsel violated the defendant's right to counsel and the photo identification was impermissibly suggestive; (4) certain admitted evidence was prejudicial; (5) the prosecutor exceeded his judicial role by eliciting sympathy in questioning the victim and in his final argument; and, (6) the seventy-five year sentence imposed on the defendant was disproportionate to the crime and disparate to the one-year sentence given to the codefendant.

The defendant's first argument as to the failure to disclose exculpatory material contained in the codefendant's confession does not have a factual basis in the record. The part of the confession in contention is the codefendant's admission that he initially shoved the victim. The record discloses that the defense counsel used this material to impeach the codefendant at trial. We, therefore, find no error as to this ground.

The second argument, the search of the defendant's car, was resolved at the suppression hearing by the trial court's conclusion that the defendant had consented to the arresting officer going to the car to get his identification from his jeans. When the police opened the door they saw a club on the back floor and paper money on the front floor which they seized. It is not argued that the police chief did not have probable cause to stop the defendant initially for speeding and based on his knowledge of the recently issued robbery bulletin.

We have held in Syllabus Point 3, in part, of State v. McKinney, 161 W.Va. 598, 244 S.E.2d 808 (1978), that the voluntariness of a consent to search "must be treated in the same manner as a confession and the trial court must, even in the absence of a specific request, determine the

voluntariness of such consent before the evidence can be introduced into evidence." While McKinney dealt with a written consent, the same principle applies where an oral consent to search has been given. E.g., United States v. Boukater, 409 F.2d 537 (5th Cir. 1969); People v. Gurtenstein, 69 Cal.App.3d 441, 138 Cal.Rptr. 161 (1977); Jones v. State, 154 Ga.App. 21, 267 S.E.2d 323 (1980); Blackwood v. State, 157 Ind. App. 286, 299 N.E.2d 622 (1973); Commonwealth v. Shadron, 471 Pa. 461, 370 A.2d 697 (1977). Cf. State v. Harris, 169 W.Va. 150, 286 S.E.2d 251 (1982). We recognized in State v. Starr, 158 W.Va. 905, 216 S.E.2d 242 (1975), that the voluntariness issue of a confession must be proven by the State by a preponderance of the evidence. This same rule would apply to the voluntariness of a consent to search. In State v. Vance, 162 W.Va. 467, 250 S.E.2d 146 (1978), we stated in Syllabus Point 3, in part, that "[a] trial court's decision regarding the voluntariness [issue] will not be disturbed unless it is plainly wrong or clearly against the weight of the evidence."

We do not believe that the court's finding on the defendant's consent issue was plainly wrong. Even though this consent was not a formal consent to search the entire vehicle, it was sufficient for the officer to go into the car to get the jeans and once lawfully there he could seize any contraband or evidence of the crime that was in plain view. In Syllabus Point 7 of State v. Moore, 165 W.Va. 837, 272 S.E.2d 804 (1980), we held:

"A warrantless seizure of property in plain view is constitutionally permissible provided three requirements are met: '(1) the police must observe the evidence in plain sight without benefit of a search [without invading one's reasonable expectation of privacy], (2) the police must have a legal right to be where they are when they make the plain sight observation and, (3) the police must have probable cause to believe that the evidence seen constitutes contraband or fruits, in-

Excavation Construction, Inc. v. Ritchie, 159 W.Va. 888, 230 S.E.2d 822 (1976); Quackenbush v. Quackenbush, 159 W.Va. 351, 222 S.E.2d 20 (1976); Higginbotham v. City of Charleston, 157

W.Va. 724, 204 S.E.2d 1 (1974), rev. on other grounds, O'Neil v. City of Parkersburg, 160 W.Va. 694, 237 S.E.2d 504 (1977).

strumentalities or evidence of crime.' Syllabus Point 3, in part, *State v. Stone*, 165 W.Va. 266, 268 S.E.2d 50 (1980)." We, therefore, conclude that the trial court's ruling at the suppression hearing was not erroneous.

◼ The defendant complains that the photographic array was impermissibly suggestive mainly because the others photographed did not have similar characteristics. The trial court reviewed the photographs and concluded they were not impermissibly suggestive. These photographs depict eight white males, several of whom do have beards that are not substantially different from the defendant's. We discussed the photographic array question at some length in *State v. Harless*, 168 W.Va. 707, 285 S.E.2d 461 (1981), where we stated in Syllabus Point 6:

"Most courts have concluded that a photographic array will not be deemed excessively suggestive as long as it contains some photographs that are fairly representative of the defendant's physical features. The fact that some of the photographs are dissimilar to the defendant's appearance will not taint the entire array."

We find no error as to the photographic array.[3]

◼ The next assignment of error relates to certain photographs depicting the interior of the store where the robbery occurred. The photographs show dried blood stains allegedly from the victim's head wounds and these photographs are claimed to be gruesome and therefore prejudicial. The stains are on the dark wood counter and floor and are not prominent. The trial court concluded as an initial finding that they were not gruesome and we agree. In order for photographs to come within our gruesome photograph rule established in *State v. Rowe*, 163 W.Va. 593, 259 S.E.2d 26 (1979), there must be an initial finding that they are gruesome.

Where they are not so found the *Rowe* rule is not triggered. *State v. Church*, 168 W.Va. 408, 284 S.E.2d 897 (1981); *State v. Haddox*, 166 W.Va. 630, 276 S.E.2d 788 (1981).

◼ The defendant alleges that it was error to admit into evidence the club found in his car. The codefendant testified that the defendant used a tire iron to strike the victim but the actual weapon used was not critical to the State's proof of aggravated robbery. The victim testified he was struck from behind with a blunt object. *Cf. State v. Peterson*, 132 W.Va. 99, 51 S.E.2d 78 (1948). We find no error on this point.

◼ The defendant also points to several remarks made by the prosecutor in questioning the victim and in his closing argument as prejudicial but no objection was made at trial except as to one and we, therefore, decline to address those to which no objection was made. Syllabus Point 2, *State v. Trogdon*, 168 W.Va. 204, 283 S.E.2d 849 (1981), *quoting* Syllabus Point 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956). The one remark objected to was that the prosecutor indicated his personal belief that the defendant was trying to kill the victim. While we do not condone this type of remark, we believe that in the context of the entire argument, it does not reach the level of reversible error as stated in Syllabus Point 1 of *State v. Barker*, 168 W.Va. 1, 281 S.E.2d 142 (1981):

" 'A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney ... to a jury which do not clearly prejudice the accused or result in manifest injustice.' Syl. pt. 1, *State v. Dunn*, 162 W.Va. 63, 246 S.E.2d 245 (1978), *in part.*"

◼ Finally, we consider the seventy-five year sentence imposed for the crime. Imposition of this sentence occurred before our decision in *State v. Houston*, 166 W.Va. 202, 273 S.E.2d 375 (1980), where we found that under Section

---

3. The defendant also asserts as a ground on appeal that he was subjected to a lineup without the benefit of counsel after he had been initially taken before a magistrate in violation of *Moore v. Illinois*, 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977). The defendant did not object to this point at trial and since there is no factual predicate in the trial court record, we decline to address this issue.

5 of Article III of our Constitution there is the requirement that penalties be proportionate to the character and degree of the offense, stating in Syllabus Point 1:

"'Article III, Section 5 of the West Virginia Constitution, which contains the cruel and unusual punishment counterpart to the Eighth Amendment of the United States Constitution, has an express statement of the proportionality principle: "Penalties shall be proportioned to the character and degree of the offence."' Syllabus Point 8, *State v. Vance,* 164 W.Va. 216, 262 S.E.2d 423 (1980)."

*Houston* involved aggravated robbery sentences of thirty and forty years. We determined in *Houston* that in those few instances[4] such as aggravated robbery where a judge has a broad leeway to set a determinate sentence there must be made a sentencing record in order to determine the appropriateness of the sentence. In *Houston,* we remanded the case for the development of an appropriate sentencing record.

In *Smoot v. McKenzie,* 166 W.Va. 790, 277 S.E.2d 624 (1981), we also recognized, as have a number of courts, that a sentence could be grossly disparate when viewed in light of the sentence given to a codefendant and set out factors that should be considered in this area. Again, in *Smoot,* we remanded the case for the development of an appropriate sentencing record. *Smoot* bears some relevance to the present case since the codefendant in this case allegedly received a one-year term following the entry of a guilty plea.

Finding no error in the trial of this case, we affirm the defendant's conviction. We do, however, remand this case for reconsideration of the sentence and for the development of an appropriate sentencing record under *Houston, supra,* and *Smoot, supra.*

Remanded with Directions.

---

**4.** In note 7 of *Houston, supra,* we said:
   "Other open-ended sentencing statutes are the kidnapping statute, W.Va.Code, 61–2–14a, 61–2–14c and 61–2–14d; the bank embezzlement statute, W.Va.Code, 61–3–20; and the crime of obstruction of railroads or canals to endanger lives, W.Va.Code, 61–3–28."