**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0459** (Morgan County 19-F-37)

**Jonathan Ray Cain,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner Jonathan Ray Cain, by counsel Michael Santa Barbara, appeals the Circuit Court of Morgan County's May 30, 2020, sentencing order following his conviction of the felony offenses of possession with intent to deliver a controlled substance and conspiracy to deliver a controlled substance. The State of West Virginia, by counsel Patrick Morrisey and Scott E. Johnson, filed a response in support of the circuit court's order.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner was indicted by the Morgan County Grand Jury on one count of possession with intent to distribute a controlled substance in violation of West Virginia Code § 60A-4-401(a)(1) and one count of conspiracy to distribute a controlled substance in violation of West Virginia Code § 60A-4-414. His case was tried before a jury. At trial, the State called a forensic scientist from the West Virginia State Police crime laboratory; an enhanced supervision regional director with the West Virginia Division of Corrections; Captain Stapleton of the Morgan County Sheriff's Department; Mr. Currence, the Northern District Supervisor for the West Virginia Parole Board; and Mr. Barnes, petitioner's co-conspirator.

The forensic scientist testified that she received and tested suspected drugs that were obtained by the Morgan County Sheriff's Department in this matter. Consistent with the West Virginia State Police crime laboratory's policy, the laboratory tests a maximum of five items seized in each case and each item undergoes two tests--a preliminary test and a confirmatory test. Her

testimony confirmed that one of the items she tested in this matter contained heroin, a schedule I controlled narcotic. Testing of this item further indicated the presence of fentanyl, a schedule II drug. The remaining items that were tested were also positive for heroin and fentanyl.

An enhanced supervision regional director for the West Virginia Division of Corrections testified that he conducts home checks of parolees, such as petitioner. According to his testimony, on July 30, 2019, he was doing routine home visits in Berkeley Springs with Mr. Currence and a parole officer. For one of his home checks, he went to petitioner's residence and he knocked repeatedly for approximately five to six minutes before petitioner's girlfriend answered the door. During the five to six minute period, he heard commotion and running throughout the house. He testified that, upon entering the residence, petitioner's girlfriend "took off back through a bedroom door" shutting it behind her and petitioner came down the steps. When he asked why there had been a delay with someone coming to the door, one of the individuals in the residence responded that they were upstairs sleeping. He recalled that Mr. Barnes was also in the house when he entered. The witness later searched petitioner's vehicle, discovered several plastic baggies that coincide with people using and selling drugs.

Captain Stapleton testified that he was contacted by parole officer Landis who asked him to assist after parole officers had discovered what they believed to be heroin during a parole search. After arriving at the residence, Captain Stapleton took several photographs that were introduced into evidence at trial; these included a photograph of petitioner's bedroom with baggies and what appeared to be a scale, a photograph of scales and bags, and a photograph of a plate and spoons with residue and needles. Captain Stapleton requested that the Sheriff prepare a search warrant for the residence to secure evidence related to Mr. Barnes. At one point, petitioner told Captain Stapleton that the drugs in the residence belonged to Mr. Barnes. Per Captain Stapleton, there were 11 baggies of drugs discovered in petitioner's room, along with $385 in cash. Captain Stapleton further testified that petitioner denied being home on the evening prior to the parole search. He also confirmed that petitioner's debit card was used on two different occasions on July 29, 2019, outside of Baltimore, Maryland.

Mr. Currence was also present during the home check on petitioner on July 30, 2019. Consistent with the prior testimony, Mr. Currence testified that no one initially answered the front door. He testified, however, that he could hear people running back and forth in the house. After approximately four or five minutes, petitioner's girlfriend answered the door. According to Mr. Currence's testimony, he followed the girlfriend into petitioner's bedroom and observed a box that had digital scales in it on a shelf in a closet. When he retrieved the box, he found the digital scales, as well as a small package of a brown substance which he believed to be heroin. When Mr. Currence confronted petitioner, petitioner advised that the scales and a small package of drugs were his. As such, Mr. Currence contacted Captain Stapleton.[1] After the search warrant arrived, a cigarette package was discovered in the closet of petitioner's bedroom that contained several individually wrapped packages of a brown substance that Mr. Currence believed to be heroin.

---

[1] We note that although the evidence as to who contacted Captain Stapleton is somewhat inconsistent, it is clear that one of the representatives from the parole office contacted Captain Stapleton following the home check at petitioner's residence.

The State also called Mr. Barnes, petitioner's co-conspirator who was at the house at the time the drugs were seized. Mr. Barnes testified that he pled guilty to conspiracy to deliver heroin with petitioner. When asked how he conspired to sell heroin with petitioner, he testified "[w]e talked about me getting the drugs from him to get rid of to get [sic] – so we can get some more money to get more drugs." He further testified that the "plan was to get rid of the drugs to get more drugs." He indicated that prior to July 29, 2019, he and petitioner had discussions about selling heroin. Per Mr. Barnes, petitioner and Mr. Barnes intended to sell drugs together and go to Baltimore to obtain more drugs when necessary.

Following the close of the State's case, petitioner moved for a judgment of acquittal. The circuit court denied the motion, and the defense rested without calling any witnesses. The jury returned a verdict of guilty on both counts. Thereafter, the circuit court sentenced petitioner to an indeterminate one to fifteen year sentence for possession with intent to distribute heroin and a determinate six year sentence for conspiracy to distribute heroin. Per the circuit court's order, the sentences were to run concurrently. Petitioner's sentence was memorialized in an order dated May 30, 2020. Petitioner appeals from that order.

On appeal, he challenges the sufficiency of the evidence for both of his convictions. He also argues that the circuit court's sentence should be reversed because it is disproportionate to the sentence received by his co-conspirator.

Initially, petitioner challenges the sufficiency of the evidence to support his convictions. We have held that

> [w]hen a criminal defendant undertakes a sufficiency challenge, all the evidence, direct and circumstantial, must be viewed from the prosecutor's coign of vantage, and the viewer must accept all reasonable inferences from it that are consistent with the verdict. This rule requires the trial court judge to resolve all evidentiary conflicts and credibility questions in the prosecution's favor; moreover, as among competing inferences of which two or more are plausible, the judge must choose the inference that best fits the prosecution's theory of guilt.

Syl. Pt. 2, *State v. LaRock*, 196 W. Va. 294, 470 S.E.2d 613 (1996). Further,

> [t]he trial court's disposition of a motion for judgment of acquittal is subject to our *de novo* review; therefore, this Court, like the trial court, must scrutinize the evidence in the light most compatible with the verdict, resolve all credibility disputes in the verdict's favor, and then reach a judgment about whether a rational jury could find guilt beyond a reasonable doubt.

*Id.* at 304, 470 S.E.2d at 623.

Petitioner claims that the State failed to produce evidence beyond a reasonable doubt that the drugs seized from his residence belonged to him. Additionally, he claims that there was "precious little evidence" that petitioner and his co-defendant reached an agreement to commit the offense of delivery of a controlled substance. Further, as to the conspiracy conviction, he maintains

that there was no evidence that either he or his co-defendant made an overt act in furtherance of any agreement to deliver a controlled substance. Respondent argues that petitioner's insufficiency claims are meritless because there was sufficient evidence to support both of petitioner's convictions. Reviewing the evidence in the light most compatible with the verdict, we agree with respondent.

Petitioner challenges his conviction for possession with intent to distribute, pursuant to West Virginia Code § 60A-4-401(a), which provides, in relevant part, that "it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Petitioner argues that this case is analogous to Syllabus Point 3, in part, *State v. Chapman*, 178 W. Va. 678, 363 S.E.2d 755 (1987), where we held that the "State must prove beyond a reasonable doubt that the defendant had knowledge of the controlled substances and that it was subject to the defendant's dominion and control." Contrary to petitioner's argument, we find stark differences in the facts in *Chapman* and the present matter. For instance, in *Chapman*, Mr. Chapman was present in someone else's house with several other adults when the sheriff's department executed a search warrant on the house. Here, however, petitioner was not simply a guest in the house. Additionally, unlike the facts of *Chapman* where the drugs were found in a common area, the drugs in this case were found in petitioner's own bedroom, specifically in his closet. Further, unlike *Chapman*, there was testimony presented to the jury in this matter from petitioner's co-defendant that petitioner actually possessed drugs. Accordingly, we find that there was sufficient evidence to support petitioner's conviction of possession with intent to distribute.

Petitioner also challenges the sufficiency of the evidence as to his conspiracy conviction. The United States Supreme Court has noted that "the essence of a conspiracy is 'an agreement to commit an unlawful act.'" *United States v. Jimenez Recio,* 537 U.S. 270, 274 (2003) (citation omitted). As to the conspiracy conviction, there was also sufficient evidence presented to the jury to prove an overt act in furtherance of the conspiracy. Specifically, petitioner's co-conspirator testified to their plan to procure and sell drugs. Further, Mr. Barnes testified that he typically got drugs from Baltimore, Maryland, a location where petitioner's debit card was used the day before the drugs were seized from petitioner's residence. Thus, a jury could reasonably conclude that petitioner drove to Baltimore the day before his house was searched to obtain heroin for Mr. Barnes and petitioner to sell. Driving to Baltimore to obtain heroin constitutes an overt act in furtherance of the conspiracy.

Next, petitioner maintains that the circuit court abused its discretion in sentencing him, arguing that his sentence stands "in stark contrast" to the sentence of deferred adjudication received by his co-defendant.

This Court reviews sentencing orders "under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, in part, *State v. Adams*, 211 W. Va. 231, 565 S.E.2d 353 (2002). We have also held that "[s]entences imposed by the trial court, if within statutory limits and if not based on some [im]permissible factor, are not subject to appellate review." Syl. Pt. 4, *State v. Goodnight*, 169 W. Va. 366, 287 S.E.2d 504 (1982).

4

Where the claim is made, as here, [that] the petitioner's sentence is disparate to that of his co-defendants the record should reflect their background. Such a record would necessarily include any presentence reports prepared on the appellant and the co-defendants, information regarding the sentences previously imposed on the appellant and the co-defendants, information showing whether those sentences were the result of plea-bargaining, whether any of the co-defendants had previously been placed on probation, why previous charges were nolled and any facts which would relate to the degree of culpability of each party in regard to the commission of the crime for which the appellant was last convicted. It seems hardly necessary to state that the burden of producing such a record rests with the petitioner since he is challenging his sentence.

*Smoot v. McKenzie*, 166 W. Va. 790, 793, 277 S.E.2d 624, 626 (1981)

Although petitioner claims that his sentencing was harsh in comparison to his codefendant, petitioner has failed to establish that Mr. Barnes actually received a sentence of deferred adjudication. Further, the State explained at petitioner's sentencing that Mr. Barnes had not yet been sentenced. In the absence of evidence of Mr. Barnes's sentence, petitioner cannot prevail on a claim of disparate sentencing.

Here, petitioner's sentence is within statutory limits. Moreover, the circuit court ordered the sentences to run concurrently, when the court could have ordered the sentences to run consecutively. Further, the sentence is not based upon an impermissible factor. Inasmuch as the sentence was within statutory limits and not based upon an impermissible factor, it is not subject to appellate review. Accordingly, this assignment of error fails.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** October 29, 2021

**CONCURRED IN BY:**

Chief Justice Evan H. Jenkins
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice John A. Hutchison
Justice William R. Wooton